# UTICA MUTUAL INSURANCE COMPANY, ETC. *v.* GAITHERSBURG-WASHINGTON GROVE FIRE DEPARTMENT, INC.

[No. 356, September Term, 1982.]

*Decided February 2, 1983.*

The cause was argued before MASON, ADKINS and ALPERT, JJ.

*Joseph J. Mulhern,* with whom were *Lipshultz & Hone, Chartered* on the brief, for appellant.

*John A. Buchanan,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

ALPERT, J., delivered the opinion of the Court.

In this appeal we address a finding by a trial judge that the appellee, Gaithersburg-Washington Grove Fire Department, Inc., was "entitled to immunity" in a negligence action. Because we hold that based upon the evidence produced at trial the appellee *was not* entitled to immunity, we shall reverse.

This case arises as the result of a fire on March 27, 1977, which destroyed a warehouse insured by the appellant, Utica Mutual Insurance Company ("Utica"). On that date a brush and trash fire occurred on property adjacent to the warehouse. The warehouse was destroyed not by the original fire which occurred that afternoon, but as the result of a second fire which began either as a reignition of smoldering vines under the eaves of the roof or a rekindling of hot spots in the eaves which allegedly went undetected by the appellee fire department in attempting to extinguish the first fire. Utica, subrogated to the rights of its insured, filed suit against the appellee in the Circuit Court for Montgomery County claiming negligence in appellee's failure to control and extinguish properly the first fire, thus causing the second fire.

Trial was held on October 7-8, 1981 and a jury returned a

verdict in favor of Utica in the amount of $67,559.04.[1] Appellee filed a Motion for Judgment N.O.V., based in part upon the trial court's failure to grant its Motion Raising Preliminary Objection on the grounds of governmental immunity. On December 18, 1981, after hearing argument from counsel for both parties, the trial court granted the motion, finding that the appellee was "entitled to immunity in this case." From that ruling this appeal was filed.

On appeal, Utica offers three assignments of error:

1. The trial court erred in ruling that the appellee had established the defense of governmental immunity;

2. Montgomery County has, through the enactment of Article VII, Section 20-37 of the Montgomery County Code, waived the defense of governmental immunity to the extent of its insurance coverage; and

3. Article VII, Section 20-37 of the Montgomery County Code conflicts with Article 25A Section 5 (cc) of the Annotated Code of Maryland and is therefore invalid.

Although appellee has not chosen to file a cross-appeal, it defends the appeal on the additional and independent ground that it was entitled to a directed verdict on the issue of negligence, and thus the court should have reached the same result for a different reason.[2] Appellee urges that even if the volunteer firemen were negligent in failing to enter and inspect the warehouse, there was no evidence as to what they would have seen had they in fact entered it. Appellee concludes that Utica's negligence theory was based entirely on impermissible speculation.

---

1. Damages were stipulated by the parties as $67,559.04. This amount represented the payment made by Utica Mutual Insurance Company to its insured, Rockville Fuel and Feed, for its loss from the fire.

2. No cross appeal was filed as to this issue. However, a cross appeal was unnecessary. See, Braswell v. Burrus, 13 Md. App. 513, 521 n.1, 284 A.2d 41, 45 n.1 (1971) where we observed, "Appellee's cross appeal was unnecessary. He could have asserted the incorrectness of the court's adverse ruling on his motion for directed verdict without taking a cross appeal." (citations omitted.)

We disagree with this contention. The jury could have believed that the negligent failure of the firemen to extinguish the fire on the outside of the first building properly was a direct cause of the second fire. As the expert witness for the appellant testified:

> In my opinion, the fire which destroyed the building was caused by a reignition of the smoldering vines under the eaves of the roof which were growing through the holes in the building walls or by rekindling of the hot-spots in the eaves of the building which went undetected by the Gaithersburg Fire Department after they extinguished the earlier, grass, brush and vines fire to the rear of the building.

From this testimony the jury could have inferred that the volunteer firemen, as alleged in appellant's first amended declaration, "did negligently fail to properly control and extinguish the aforesaid [initial] fire." The jury could have found that this failure to control the first fire was the direct cause of the reignition or rekindling leading to the second fire. No impermissible speculation would have been required to reach this conclusion. Considering the evidence in a light most favorable to Utica, there was evidence from which the jury could have inferred a fact in issue. Therefore, the appellee's motion for a directed verdict was properly denied. *See, General Motors v. Lahocki,* 286 Md. 714, 733, 410 A.2d 1039, 1049 (1980) where the Court of Appeals set forth the following standard for considering a motion for a directed verdict:

> In considering a motion for a directed verdict the trial court assumes the truth of all credible evidence on the issue and of all inferences fairly deducible therefrom. It then considers them in the light most favorable to the party against whom the motion is made. *Impala Platinum v. Impala Sales,* 283 Md. 296, 328, 389 A.2d 887 (1978), and cases there cited. If there is any legally relevant and

competent evidence, however slight, from which a rational mind could infer a fact in issue, then a trial court would be invading the province of the jury by directing a verdict. In such circumstances, the case should be submitted to the jury and a motion for a directed verdict denied.

*See also, Fowler v. Smith,* 240 Md. 240, 246, 213 A.2d 549 (1965).

Turning to the question of governmental immunity,[3] first raised at trial by the appellee by way of a Motion Raising Preliminary Objection,[4] the trial court without articulating any specific theory found that Gaithersburg-Washington Grove Fire Department, Inc. was "entitled to immunity." There are two theories which the trial judge may have applied in finding appellee to be immune from tort liability under the doctrine of governmental immunity. The first is that because the volunteer firemen were public officials performing discretionary duties, they were protected by public official immunity and appellee, as their employer, was thus vicariously immune. The second theory is that appellee itself was a governmental agency and thus, unless waived, was entitled to direct governmental immunity.

Before a governmental representative in this State is relieved of liability for his negligent acts, it must be determined that two independent factors simultaneously exist: (1) the individual actor, whose alleged negligent conduct is at issue, is a public official rather than a mere government employee or agent; and (2) his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties.

---

**3.** Although the terms are often used interchangeably, "sovereign" and "governmental" immunity are not synonymous. "Sovereign" immunity is a specific term limited in its application to nations and states and to the departments, commissions, boards, institutions and instrumentalities of the state. The individual counties in Maryland are not sovereign entities. *See,* Ramsey v. Prince George's County, 18 Md. App. 385, 387 n.2, 308 A.2d 217, 219 n.2, *cert. denied* 269 Md. 765 (1973).

**4.** A Motion Raising Preliminary Objection on the grounds of governmental immunity may be filed at any time. Maryland Rule 323(b).

*James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980). If these two conditions are found to exist, a qualified immunity attaches. This immunity frees the individual from liability in the absence of malice. *Id.*

We need not reach the second issue, of whether the firemen in question were performing discretionary acts, for even if we were to find that they were, under the law they were not public officials and therefore no personal immunity could attach.

In determining whether an individual is a public official within the context of governmental immunity, there are four principal guidelines to be followed:

> (i) The position was created by law and involves continuing and not occasional duties.
>
> (ii) The holder performs an important public duty.
>
> (iii) The position calls for the exercise of some portion of the sovereign power of the State.
>
> (iv) The position has a definite term for which a commission is issued and a bond and an oath are required.

*Duncan v. Koustenis,* 260 Md. 98, 271 A.2d 547 (1970). Further, an individual who fails to meet most of the above tests, and yet is nevertheless considered to be a public official, is one who exercises a large portion of the sovereign power of government as well as one who can be called on to exercise police powers as a conservator of the peace. *James, supra,* 288 Md. at 324-25, 418 A.2d at 1178-79 (*quoting Duncan, supra,* 260 Md. at 106, 271 A.2d at 551).

In *Macy v. Heverin,* 44 Md. App. 358, 408 A.2d 1067 (1979), this court addressed the issue of whether a volunteer fireman was a public official. In holding that volunteer firemen were not public officials, Chief Judge Gilbert, speaking for this Court, opined:

> Volunteer firemen are of necessity highly motivated in the performance of acts tending to

alleviate the physical pain and suffering of their fellow man, as well as to protect his property from ravage and destruction by fire. Notwithstanding their lofty motivation, they remain volunteers and are not subject to direction or control of the sovereign. *They are not public officers or public employees.* (emphasis supplied).

*Id.* at 364, 408 A.2d at 1070.

This Court has thus made clear that a volunteer fireman, such as those involved in fighting the fire in the instant case, are not public officials, and cannot enjoy public official immunity.[5] Accordingly, we hold that *Macy* is dispositive and that the volunteer firemen in the instant case, including the Fire Chief, enjoy no personal immunity and therefore the appellee may not claim an immunity based on derivative public official immunity.[6]

The other theory by which the appellee could possibly enjoy immunity is that of direct governmental immunity. Simply put, in the absence of a waiver of tort immunity, if it were to be determined that Gaithersburg-Washington

---

5. However, see Md. Cts. & Jud. Proc. Code Ann. §5-309 (1974, 1980 Repl. Vol., 1982 Cum. Supp.) which provides immunity from civil liability to volunteer firemen for any act or omission in giving emergency assistance or medical care.

6. We acknowledge that in *James, supra,* the Court of Appeals, in *dicta,* made the following statement:

> In contrast, if what we had before us was a suit arising out of the discretionary decision of a fire chief (although generally authorized) to destroy a specific non-burning building in order to contain a fire in another nearby building, we would have no doubt that the action would isolate the public official from liability since it involves an exercise of his personal judgment and expertise in furtherance of the State's police power.

288 Md. 315 at 328, 418 A.2d 1173 at 1180.

We believe that the Court of Appeals was indicating that it would find immunity in the hypothetical case only if the fire chief were paid by some county or other governmental agency. We do not believe that the Court meant to imply that a volunteer fire chief would be immune under the given situation. This is especially true in light of the fact that the *James* court cited *Macy v. Heverin* with approval in another portion of its opinion. *See.* 288 Md. 315 at 323, 418 A.2d 1173 at 1178. Our result that the volunteer firefighters in this appeal enjoy no public official immunity is entirely consistent with the quoted language in *James.*

Grove Fire Department, Inc. is a governmental entity as opposed to a private entity, it would be immune from tort liability.[7] However, from a review of the record in this appeal, we find that the evidence produced at trial was insufficient to establish the appellee as a governmental agency.

Initially, we observe that firefighting is a governmental function to which immunity would attach if the appellee were a government agency. *See, Annapolis v. West Annapolis Fire and Imp. Co.,* 264 Md. 729, 737, 288 A.2d 151, 155 (1972); *Schwartz v. Borough of Stockton,* 32 N.J. 141, 160 A.2d 1, 5-6 (1960). *Cf. City of Wooster v. Arbenz,* 116 Ohio St. 281, 156 N.E. 210 (1927). As such, it is distinguished from a proprietary function for which no immunity attaches. The importance of the distinction between governmental and proprietary functions was set forth by the Court of Appeals in *O & B, Inc. v. Maryland-Nat'l Cap. P. & P. Comm'n,* 279 Md. 459, 462, 369 A.2d 553, 554 (1977):

> [U]nlike the total immunity granted to the state and its agencies with respect to actions arising in tort, the immunity of the counties, municipalities, or local governmental agencies in such actions is limited in scope. In a tort action, it has been held that a political subdivision may invoke the defense of governmental immunity only when the alleged tortious conduct occurred while the county or municipality was exercising a "governmental" rather than a "proprietary" function. (citations omitted).

*See, Austin v. Mayor and City Council of Baltimore,* 286 Md. 51, 405 A.2d 255 (1979).

---

7. *See, e.g.,* University of Maryland v. Maas, 173 Md. 554, 557-58, 197 A. 123, 124 (1938) where the Court of Appeals commented:

[P]urely governmental agencies, because of their relation to the state, are entitled to immunity from suits as is the state itself, unless the legislature has expressly authorized suits to be brought against it.

Appellee argues that Section 21-8 of the Montgomery County Code (1977) establishes it as a governmental agency. That section, which is the only direct reference to the Gaithersburg-Washington Grove Fire Department found in the Montgomery County Code, provides:

There is hereby created a commission to manage the finances of the Gaithersburg-Washington Grove Fire Department, raised by the levy of the tax provided in paragraph (2) of subsection (d) of section 21-4, the commission to consist of seven members, all of whom shall be taxpayers, to be appointed for a term of one year and in the following manner:

Two of the members shall be appointed by the mayor and council of Gaithersburg; two by the mayor and council of Washington Grove; two by the members of the Gaithersburg-Washington Grove Fire Department, Inc. from its active membership, and one shall be selected by the six members appointed as herein provided from outside the sanitary zone but a taxpayer of the area depicted as "Gaithersburg-Washington Grove" described and outlined on the map incorporated in section 21-13.

Appellee also refers us to various other code provisions and urges that when taken as a whole, they establish its status as a governmental agency. Specifically, section 71-1 of the Montgomery County Code creates the body corporate of Gaithersburg. Section 71-3 creates a Gaithersburg City Council. Section 71-19 (20) gives the Gaithersburg City Council the power:

To suppress fires and prevent the dangers thereof and to establish and maintain a fire department; to contribute funds to volunteer fire companies serving the town; to inspect buildings for the purpose of reducing fire hazards, to issue regulations concerning fire hazards, and to forbid and prohibit the use of fire-hazardous buildings and

structures permanently or until the conditions of
city fire hazard regulations are met; to install and
maintain fire plugs where and as necessary, and to
regulate their use; and to take all other measures
necessary to control and prevent fires in the city.

Finally, appellee refers us to section 22-24 (a) of the County
Code which immunizes from damages any individual
charged with enforcement of the Fire Safety Code.[8]

These statutory considerations are insufficient to
establish the appellee as a governmental agency entitled to
a direct governmental immunity.[9] Whether an entity is to be
considered a governmental body must be determined on a
case-by-case basis. In considering what makes the difference
between a "governmental" entity and a "private" one, it has
been said that:

Governmental power is the capacity to command
or prohibit actions by individuals against their will.

---

8. Additionally, we note that Section 21-1 of the Montgomery County
Code requires the approval of the county council prior to the organization
of a volunteer fire company.

9. There are various references in the Maryland Code which relate to
volunteer firemen and volunteer fire companies. None of these references,
however, establish the appellee as a governmental entity, either directly or
by implication. *See,* Article 23A §6 (adoption of fire prevention codes by
municipal corporations); Article 25 §13A (retirement; Charles County);
Article 25 §13B (retirement; Calvert County); Article 25 §13C (retirement;
St. Mary's County); Article 25 §13D (Frederick County volunteer fire
department monetary service award plan); Article 38A §42 (Disabled
Firemen's and Rescue Squadsmen's List); Article 38A §42B (annual
appropriation for volunteer firemen disabled or deceased); Article 38A §43
(pensions to families and survivors of volunteer firemen killed while on job);
Article 38A §45 (when volunteer fireman considered on duty for purposes
of Federal Public Safety Officer's Benefit Act); Article 38A §46 (service
awards for Kent and Queen Anne's Counties); Article 38A §46A,B,C
(Emergency Trust Fund); Article 41 §59A-1 (cash benefits to survivors of
deceased volunteer firemen); Article 48A §425 (group life insurance
requirements for volunteer fire departments); Article 81 §9 (real and
tangible property of non-profit incorporated fire department exempt from
taxation); Article 81 §326 (exemption from sales tax for non-profit volunteer
fire departments); Article 87 §50 *et seq.* (volunteer firemen serving as
deputy sheriffs); Article 100 §109 (discharge of volunteer firemen because
of participation in activities related to fire company); Article 101 §34
(workmen's compensation funding for volunteer firefighters); Corporations
and Associations Article §1-203.1 (exemption from corporate recordation
fees); Courts and Judicial Proceedings Article §5-309 (immunity from
liability; good samaritan law); Education Article §18-601 *et seq.* (education
of and scholarships for children of dead or disabled volunteer firemen).

There is a wide assortment of institutions and organizations which regulate the actions of individuals, but they are not governmental unless they can impose their regulations on persons who do not consent thereto. . . *The characteristic which distinguishes all such private regulation from governmental action is that one who is subject to such regulation can always escape its reach by withdrawing from the relationship to which it is appended.*

No such freedom exists, in any realistic sense, to submit to or withdraw the jurisdiction of government. . .

It remains to be considered what are the identifying characteristics of a "governmental" entity which makes it eligible to be entrusted with the power to exert its authority over all who happen to be within its jurisdiction. In the American system of government, the capacity to exercise governmental power appears to depend on openness of access to participation in decisions about what actions the government should take, subject only to restriction of access for relevant reasons. In other words, *if those who exercise the power of decision are answerable to the general electorate of an entity, in the sense that decisions are made by persons who are controlled by them, either directly by election or indirectly through appointment by elected officials, the entity qualifies as being governmental in character.*

1 Sands and Libonati, *Local Government Law* §2.04 (1981). (emphasis supplied).

The case law provides additional insight into the question. In *Voltz v. Orange Volunteer Fire Ass'n, Inc.,* 172 A. 220 (Conn. 1934), the defendant volunteer fire company was sued when a trespasser was injured when he fell from a fire truck. The volunteer fire company claimed it was a municipal corporation entitled to tort immunity. The trial court disagreed and the Supreme Court of Errors of

600

Connecticut affirmed. It noted, "The association was not a branch or department of the town, but *an independent corporation voluntarily assuming to perform certain functions which the town itself might have performed,* and is liable for the negligence of its servants or agents acting within the scope of their authority." (emphasis supplied). *Id.* at 221. In reaching this conclusion, the appellate court observed that the defendant was a volunteer fire association organized for the purpose of fighting fires in the town of Orange, which had no fire department, but made annual appropriations to the defendant. Further, the defendant maintained its own fire house and firefighting equipment.

The Rescue Fire Company ("RFC"), a volunteer fire department, was found to be an agency of the City of Cambridge, Maryland in *Williams v. Rescue Fire Co., Inc.,* 254 F. Supp. 556 (D.Md. 1966). As Judge Northrop observed:

> There is no dispute that RFC is the official and only fire department of Cambridge and a portion of Dorchester County. *This is established by RFC's manner of operation, by City ownership of the headquarters and fire equipment, by court decisions, by state statute and by local ordinance.* The Company belongs to the public or governmental branch of the municipality. RFC's status as a city agency is not affected by the fact that it is in large measure composed of non-salaried firemen. (citations omitted) (emphasis supplied).

*Id.* at 561.

In making the observation, the court had before it evidence that RFC was a non-profit corporation organized in 1882 and incorporated in 1885, the fire chief and his assistants were under the direction of the Mayor and local Commissioners, the chief had complete control during a fire call, the city owned nearly all of the fire fighting equipment and evidence that the fire fighting apparatus was housed in the Cambridge City Hall, owned by the city. Further, the city provided an annual appropriation to the fire company.

The court found the defendant volunteer fire company to be a governmental entity in *Everett v. Riverside Hose Co. No. 4, Inc.,* 261 F. Supp. 463 (S.D.N.Y. 1966). The defendant had been organized under special provisions of the New York Membership Corporations Law. Membership was subject to the approval of the Board of Fire Commissioners. Defendant's fire houses were built, owned and operated by the local village and its fire equipment was also purchased and owned by the village. Members of the fire department were entitled to a reduced assessment on their real estate and were entitled to benefits under state law. Additionally, a volunteer fireman was exempted from jury duty and entitled to free transportation and the use of telegraph lines and telephones under certain circumstances.

In *Whitney v. San Francisco Fire Dep't.,* 14 Cal. 479 (1860), it was held that the local fire department was a branch of the municipal government. Reasoning that the beneficial nature of its organization would never permit its dissolution, the court found that "[t]he legislation in reference to this subject, and the action of the local government of the city of San Francisco, establish, beyond all question, that the department was organized in pursuance of legislative authority, and is now and has always been, a branch of the municipal government of that city."

These authorities indicate the type and extent of factual proof ordinarily required to establish an entity as a governmental agency. In the instant case, the evidence adduced at trial simply did not provide the trial judge with a sufficient factual basis to elevate the appellee to the status of governmental agency. In fact, the evidence tended to refute any governmental entity relationship. The appellee owns its own property, buildings and equipment, pays its own non-volunteer employees and enacts its own rules and regulations. It is an independent corporation, having been duly incorporated in 1977. No other evidence concerning this issue was presented at trial and based on these scant facts, it would have been erroneous for the trial judge to conclude

that the appellee was a governmental entity.[10] As to the statutory provisions in the Montgomery County Code urged upon us, we believe that section 21-8 of the County Code is only regulatory in nature. It does not statutorily establish the appellee as a governmental agency.

Accordingly, we hold that the appellee has failed to establish itself as a governmental agency entitled to tort immunity.[11] *See also, Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 397 A.2d 1027 (1979); *O & B, Inc. v. Maryland-Nat'l Cap. P. & P. Comm'n, supra, Goldberg v. Howard Co. Welfare Board,* 260 Md. 351, 355-56, 272 A.2d 397 (1971); *Sikora v. Steinberg,* 40 Misc. 2d 649, 243 N.Y.S.2d 766 (1963), *aff'd,* 249 N.Y.S.2d 401 (N.Y. 1964); *Doherty v. Oakland Beach Volunteer Fire Co.,* 70 R.I. 446, 40 A.2d 737 (1944).

We do not mean to imply that a volunteer fire company may never be a governmental agency. *See,* 62 C.J.S. *Municipal Corporations* §595; 16 McQuillen, *Municipal Corporations* §45.05 (1979). We simply hold that the evidence presented at this trial was insufficient to establish the appellee as a governmental agency entitled to tort immunity. Therefore, the trial judge's conclusion that the appellee was entitled to immunity was erroneous. Accordingly, we shall reverse the granting of the appellee's motion for judgment n.o.v. and reinstate the jury verdict for the appellant in the amount of $67,559.04. Maryland Rule 563 (c) (1).

In view of our holding that the appellee was not entitled to immunity under either theory, it is unnecessary for us to consider whether that immunity was waived. However, we note in passing that counsel for both parties appear to be arguing over a statute (Section 20-37 of the Montgomery County Code) which was not effective until after the date of

---

10. The trial judge did not state his reasons for determining that the appellee was "entitled to immunity."

11. The only immunity raised by the appellee was that of governmental immunity. The question of charitable immunity, if at all applicable, was not raised below, pursuant to Maryland Rule 323 and therefore is not an issue before us.

the occurrence which gave rise to the instant litigation. The applicability of that statute to the case *sub judice* is questionable. Further, we find it unnecessary to rule whether that particular statute conflicts with the Express Powers Act, Md. Ann. Code art. 25A, §5 (cc) (1957, 1981 Repl. Vol.).

> *Judgment reversed; case remanded to the Circuit Court for Montgomery County with instructions to enter judgment in accordance with this opinion; appellee to pay the costs.*