756 A.2d 987

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

v.

**Sharon E. CHASE, Personal Representative
of the Estate of Carlean Burley, et al.**

**No. 77, Sept. Term, 1999.**

Court of Appeals of Maryland.

July 27, 2000.

Reconsideration Denied Aug. 21, 2000.

Timothy L. Mullin, Jr. (Edward W. Brady, Alicia C. Reynolds, Miles & Stockbridge, P.C., on brief), Baltimore, for petitioners.

John Amato, IV (Goodman, Meagher & Enoch, LLP, on brief), Baltimore, for respondents.

Thomas A. Woodley, Kurt T. Rumsfeld, Manar S. Morales, Mulholland & Hickey, Washington, DC, on brief of Amici Curiae International Ass'n of Fire Fighters, AFL-CIO, and other named organizations on behalf of Appellants.

Joel A. Smith, Linda Cortez, Kahn, Smith & Collins, P.A., Baltimore (counsel for Amici Curiae, Maryland State & District of Columbia Professional Firefighters, AFL-CIO, CLE, et al.), on briefs on behalf of Amici Curiae, Maryland State and District of Columbia Professional Fire Fighters, AFL-CIO-CLC; Baltimore City Fire Fighters, Local 734; Baltimore City Fire Officers, Local 964; Baltimore County Professional Fire Fighters Ass'n, Local 1311; Anne Arundel County Professional Fire Fighters, Local 1563; Hagerstown Professional Fire Fighters, Local 1605; Prince George's County Fire Fighters, Local 1619; Montgomery County Career Fire Fighters, Local 1644; Cumberland Fire Fighters, Local 1715; BWI

Airport Fire Fighters, Local 1742; Annapolis Professional Fire Fighters, Local 1926; Howard County Professional Fire Fighters, Local 2000 and Career Firefighters Ass'n of Frederick County, Local 3666.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI, (Retired, Specially Assigned), JJ.

BELL, Chief Judge.

■ The issue that we resolve in this opinion is the applicability of Maryland Code (1973, 1998 Repl.Vol., 1999 Cum Supp.) § 5–604(a),[1] which grants immunity to those within its coverage "from civil liability for any act or omission in the course of performing their duties," to a paramedic in the Baltimore City Fire Department. Consistent with the conclusion reached by the Circuit Court for Baltimore City and contrary to that of the Court of Special Appeals, *see Chase v. Mayor & City Council of Baltimore*, 126 Md.App. 427, 441–44, 730 A.2d 239, 246–48 (1999), we shall hold that this statute applies to municipal fire and rescue departments and their employees, as well as to volunteer fire and rescue companies and their employees. Accordingly, we reverse the judgment of the intermediate appellate court.[2]

Kevin D. Williams, one of the petitioners, is an emergency medical technician, a paramedic, employed by the Baltimore

---

1. Maryland Code (1973, 1998 Repl.Vol., 1999 Cum.Supp.) § 5–604(a) of the Courts and Judicial Proceedings Article provides:

    "(a) Immunity from civil liability.—Notwithstanding any other provision of law, except for any wilful or grossly negligent act, a fire company or rescue company, and the personnel of a fire company or rescue company are immune from civil liability for any act or omission in the course of performing their duties."

2. Included in the Petition for Writ of Certiorari, which we granted, was a second question, i.e.,

    "Whether a paramedic employed by the Baltimore City Fire Department to provide emergency medical services is denied immunity under Section 5–603 of the Courts and Judicial Proceedings Article because the City of Baltimore charges a fee for transportation to a hospital by a Baltimore City Fire Department ambulance."

City Fire Department. In the performance of his duties, the petitioner, along with the ambulance driver responded to a 911 call for ambulance. Upon arrival at the address from which the call was made, he met the patient, Carlean Burley, the respondents'[3] decedent. After her condition had been assessed and oxygen administered, the patient was placed in the ambulance for transport to the hospital. When the patient went into cardiac arrest, the petitioner, as a part of emergency treatment, attempted to intubate her—a procedure in which a tube is put into the treachea to assist in breathing. The patient was then transported to the hospital, where she died the next day.

The respondents filed suit in the Circuit Court for Baltimore City against the Mayor and City Council of Baltimore and the petitioner Kevin Williams, alleging that Williams improperly intubated Ms. Burley by inserting the tube in her esophagus instead of her trachea. They further alleged that the error was negligence and gross negligence and that it caused her death. Following a hearing, the Circuit Court granted summary judgment in favor of the petitioners, holding, *inter alia,* that § 5–604 was applicable, that the conduct of petitioner Williams was not grossly negligent and, as a result, that both Williams and the City were immune from civil liability. The respondents successfully appealed to the Court of Special Appeals. That court held that § 5–604 applied only to volunteer and private fire and rescue companies and their personnel and, therefore, was inapplicable to a paramedic employed by a municipal fire department.[4] 126 Md.App. at 442–44, 730 A.2d at 247–48.

---

We need not now reach that issue and, therefore, neither intimate, nor express any opinion as to its answer.

3. Sharon E. Chase, personal representative of the estate of Carlean Burley, and Darlene Burley, guardian and next friend of Richard Sturdivant, grandson of Ms. Burley, on whom, it was alleged, he was financially dependent.

4. The Court of Special Appeals also addressed the petitioners' entitlement to immunity under The Good Samaritan Act, Maryland Code

Since this case is about the meaning and, thus, the effect, of § 5–604, it is governed by well settled canons of statutory construction. The legislative history of Senate Bill 731, which became the Fire and Rescue Act, Maryland Code (1973, 1983 Replacement Volume) § 5–309.1 of the Courts and Judicial Proceedings Article, *see* 1983 Laws, ch. 546, the predecessor of § 5–604 is confirmatory of the meaning discerned from the words of the statute itself. Section 5–604 has been before this Court previously for interpretation, but not on this issue.

In *Washington Suburban Sanitary Commission v. Riverdale Heights Volunteer Fire Co., Inc.*, 308 Md. 556, 569, 520 A.2d 1319, 1326 (1987), we considered the legislative history of § 5–604, noting that it was before the General Assembly during the 1983 session and that:

"The file of the Senate Judicial Proceedings Committee ... reflects that the legislation was a response to *Utica Mutual Insurance Co., Inc. v. Gaithersburg–Washington Grove Fire Department, Inc.*, 53 Md.App. 589, 455 A.2d 987 (1983). Utica Mutual was a negligence action brought by a fire insurance company, as subrogee of its insured, against a fire company for alleged negligence in failing properly to extinguish a fire which later reignited leading to a second fire. The circuit court had held that the fire company enjoyed governmental immunity but the Court of Special Appeals reversed, holding that whether a fire company enjoyed governmental immunity was a question of fact on which the fire company in *Utica Mutual* had failed to produce sufficient evidence. The intermediate appellate court decided *Utica Mutual* on February 2, 1983, and on February 3, 1983, a member of the Maryland Senate requested the Department of Legislative Reference to prepare a bill granting immunity to volunteer

---

(1973, 1998 Rcpl.Vol., 1999 Cum.Supp.) § 5–603 of the Courts and Judicial Proceedings Article. It concluded that statute did not immunize a paramedic employed by a municipal fire department when the city charges a fee for ambulance service. *Chase v. Mayor and City Council of Baltimore*, 126 Md.App. 427, 437–40, 730 A.2d 239, 244–46 (1999). As previously indicated, we do not reach this issue.

firefighters. As introduced the bill provided that '[a] volunteer fire company is immune from liability in the same manner as a local government agency for any act or omission in the course of performing its duties if [ ] the act or omission is not one of gross negligence.....' The bill was amended in the course of passage to its present form."

Because the issue presented in that case was the retrospective application of the statute, we contented ourselves with rejecting the Fire Company's argument that its purpose was to restore the governmental immunity volunteer companies enjoyed before the *Utica* decision. *Id.* at 570, 520 A.2d at 1326–27. Thus, although we noted the statute's genesis and its metamorphosis during its trek through the legislative process, we did not address the statute's meaning, applied prospectively, and, indeed, had no need to do so.

Nevertheless, from the standpoint of statutory construction, it is important that the statute started with a narrow focus—to exempt volunteer fire companies—and ended worded much more broadly—referring simply to "a fire company or rescue company, and the personnel of a fire company or rescue company." That most emphatically supports the argument that the petitioners make, that the Legislature, by enacting the statute, intended to immunize all fire and rescue companies and their personnel and that immunization is "from civil liability for any act or omission in the course of performing their duties." In point of fact, the statute in this regard is quite clear and unambiguous. Reading the statute reveals not a bit of ambiguity as to the scope of its reach and, giving the words of the statute their ordinary meaning, as we are required to do, *see Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 578, 683 A.2d 512, 517 (1996) ("we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also"), even less as to its clarity. The statute is rendered even clearer when it is recalled that the Legislature

knows how to differentiate between voluntary fire companies and municipal fire companies and has done so clearly whenever that is what it intended. *See* Maryland Code (1973, 1998 Repl.Vol., 1999 Cum.Supp.) § 5–603 of the Courts and Judicial Proceedings Article.[5]

---

**5.** That section, headed *"Liability for emergency medical care,"* provides:
   "(a) A person described in subsection (b) of this section is not civilly liable for any act or omission in giving any assistance or medical care, if:
      "(1) The act or omission is not one of gross negligence;
      "(2) The assistance or medical care is provided without fee or other compensation; and
      "(3) The assistance or medical care is provided:
      "(i) At the scene of an emergency;
      "(ii) in transit to a medical facility; or
      "(iii) Through communications with personnel providing emergency assistance.
   "(b) Subsection (a) of this section applies to the following:
      "(1) An individual who is licensed by this State to provide medical care;
      "(2) A member of any State, county, municipal, or volunteer fire department, ambulance and rescue squad or law enforcement agency or of the National Ski Patrol System, or a corporate fire department responding to a call outside of its corporate premises, if the member:
      "(i) has completed an American Red Cross course in advanced first aid and has a current card showing that status;
      "(ii) has completed an equivalent of an American Red Cross course in advanced first aid, as determined by the Secretary of Health and Mental Hygiene; or
      "(iii) is certified or licensed by this State as an emergency medical services provider;
      "(3) A volunteer fire department, ambulance and rescue squad whose members have immunity; and
      "(4) A corporation when its fire department personnel are immune under paragraph (2) of this subsection.
   "(c) An individual who is not covered otherwise by this section is not civilly liable for any act or omission in providing assistance or medical aid to a victim at the scene of an emergency, if:
      "(1) The assistance or aid is provided in a reasonably prudent manner;
      "(2) The assistance or aid is provided without fee or other compensation; and
      "(3) The individual relinquishes care of the victim when someone who is licensed or certified by this State to provide medical care or services becomes available to take responsibility."
   It is interesting to note that in subsection (b)(2), the Legislature distinguished between "State, county, municipal, or volunteer fire de-

■ The goal with which we approach the interpretation of a statute is to determine the intention of the Legislature in enacting it. The rules governing the conduct of that search are well settled and have been stated by this Court on many occasions. In *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 578–79, 683 A.2d 512, 517–18 (1996), this Court said, on the subject:

"[W]e begin our analysis by reviewing the pertinent rules [of statutory construction]. Of course, the cardinal rule is to ascertain and effectuate legislative intent. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448, 451 (1994); *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993). To this end, we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also. *Oaks, supra,* 339 Md. at 35, 660 A.2d at 429; *Buckman, supra,* 333 Md. at 523, 636 A.2d at 451; *Condon, supra,* 332 Md. at 491, 632 A.2d at 755; *Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993).

"Where·the statutory language is plain and unambiguous, a court may neither add nor delete language so as to 'reflect an intent not evidenced in that language,' *Condon, supra,* 332 Md. at 491, 632 A.2d at 755, nor may it construe the statute with " 'forced or subtle interpretations' that limit or extend its application.' *Id. (quoting Tucker v. Fireman's Fund Insurance Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)). Moreover, whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. *Buckman, supra,* 333 Md. at 524, 636 A.2d at 452; *Condon, supra,* 332 Md. at 491, 632 A.2d at 755."

_____

partment, ambulance and rescue squad" and in subsection (b)(4), it was explicit in describing the affected organizations as "a volunteer fire department, ambulance and rescue squad."

This Court has pointed out that, in interpreting a statute, the context in which the statute appears must be considered. *Morris v. Prince George's County*, 319 Md. 597, 604, 573 A.2d 1346, 1349 (1990); *State v. 149 Slot Machines*, 310 Md. 356, 361, 529 A.2d 817, 819 (1987); and that context may include related statutes, pertinent legislative history and "other material that fairly bears on the ... fundamental issue of legislative purpose or goal...." *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 632 (1987). On this subject, we have instructed:

"Where the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. [*State v.*] *Crescent Cities Jaycees*, 330 Md. [460] at 468, 624 A.2d [955] at 959 [1993]. When, in that scheme, two statutes, enacted at different times and not referring to each other, *Farmers & Merchants [National] Bank v. Schlossberg*, 306 Md. 48, 56, 507 A.2d 172, 176 (1986); *Management Personnel Serv. v. Sandefur*, 300 Md. 332, 341, 478 A.2d 310, 314 (1984), address the same subject, they must be read together, *State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9, 12 (1990), *i.e.*, interpreted with reference to one another, *Schlossberg*, 306 Md. at 61, 507 A.2d at 178; *Bridges v. Nicely*, 304 Md. 1, 10, 497 A.2d 142, 146 (1985), and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme. *Balto. Gas & Elec. [v. Public Service Com'n of Md.]*, 305 Md. [145] at 157, 501 A.2d [1307] at 1313 [1986]. Neither statute should be read, however, so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory. *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590, 594 (1992); *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Kindley v. Governor of Md.*, 289 Md. 620, 625, 426 A.2d 908, 912 (1981); *Moberly v. Herboldsheimer*, 276 Md. 211, 217, 345 A.2d 855, 858 (1975). In attempting to harmonize them, we presume that, when the Legislature enacted the later of the two statutes, it was aware of the one earlier enacted. *Cicoria v.*

*State,* 332 Md. 21, 43, 629 A.2d 742, 752 (1993); *Bricker,* 321 Md. at 93, 581 A.2d at 12."

*Government Employees Ins. Co. and GEICO v. Insurance Com'r,* 332 Md. 124, 131–32, 630 A.2d 713, 717–18 (1993).

Application of these rules produces a clear, logical and predictable result. As we have seen, § 5–604 speaks broadly both as to the immunity it bestows and with regard to its recipients. In this regard, as we have also seen, it is not at all ambiguous.

■ To be sure, a statute whose terms are unambiguous when the statute is considered by itself, may be rendered ambiguous when viewed in light of a related statute or when that statute is part of a larger statutory scheme. *See Gardner v. State,* 344 Md. 642, 648, 689 A.2d 610, 613 (1997) (statutes that are clear when viewed separately may well be ambiguous where their application in a given situation, or when they operate together, is not clear). That is not the case here, however.

Section 5–603 is relevant to the interpretation of § 5–604 and, therefore, was appropriately considered by the Court of Special Appeals in determining § 5–604's meaning. It predated the enactment of § 5–604 and, thus, its existence and content are presumed to have been known to the Legislature when the later enacted statute was promulgated; it is in essence a part of the context in which § 5–604 must be viewed. Section 5–603 does not, however, affect the clarity of § 5–604; reading the two statutes together does not render § 5–604 ambiguous. Just the opposite is the case. By using the phrase, "[n]otwithstanding any other provision of law," § 5–604 clearly and unambiguously states its relationship to § 5–603 and other statutes or laws on the same subject, prescribing different requirements, that the immunity it provides takes precedence over and prevails as against restrictions made applicable to fire and rescue companies by those other statutes, including § 5–603. It is difficult to imagine how that legislative intent could have been stated any clearer.

Even more difficult to imagine is a more reasonable interpretation.

■ Without any regard to whether the statute is ambiguous and, indeed, without explicitly addressing the point, the respondents argue that when the legislative history is considered, it is apparent that § 5–604 applies to volunteer fire and rescue companies and to private fire companies and their personnel, but not to municipal fire and rescue companies. Aside from the fact that the legislative history on which it relies does not support the conclusion, the respondents misuse that history. It is true, of course, that our cases indicate that even when the language of a statute is free from ambiguity, "in the interest of completeness" we may, and sometimes do, explore the legislative history of the statute under review. *E.g., Harris v. State,* 331 Md. 137, 146, 626 A.2d 946, 950 (1993). We do so, however, to look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account. *Id.* In other words, the resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute. *See Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ("a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature.").

The respondents submit that it is apparent that the General Assembly intended to extend to non-governmental fire and rescue companies the same immunity that the common law conferred on their governmental counterparts. Curiously, they fail to explain why it is apparent. Nor, as we have seen, other than its reliance on the legislative history, do the respondents explain their disregard of § 5–604's plain language.

The respondents offer yet another reason for interpreting § 5–604 as applicable only to volunteer and private fire and rescue companies: the word "company" is appropriately used only in connection with volunteer or private concerns; their

municipal counterparts are referred to as "departments." That is a slender reed on which to base a matter of statutory construction as important as this. Moreover, while that may be the usual and customary usage, it is not without exception and certainly it is not universally followed by the General Assembly. Indeed, in the very statute that the respondents urge in support of the interpretation they favor, § 5–603, the General Assembly referred to "voluntary fire departments." *See* subsection (b)(2) and (b)(3). Having used terminology usually reserved for municipal entities in the prior section, nothing legitimately can be made of the Legislature's use of terminology more common to references to private entities in § 5–604.

The interpretation of § 5–604 advocated by the respondents is inconsistent with most, if not all of the applicable canons of statutory construction. The respondents disregard, if not ignore, the fact that § 5–604 is not ambiguous at all, that its language is crystal clear. As already pointed out, § 5–604's relationship to pre-existing law and statutes bearing on the immunity of fire and rescue companies is addressed head-on and without equivocation—whatever their provisions in that regard, *i.e.* "Notwithstanding any other provision of law," they do not affect, or survive, the immunity accorded fire and rescue companies by the provisions of § 5–604. That could not be clearer. Indeed, the interpretation the respondents favor and urge us to adopt renders the "notwithstanding" phrase essentially meaningless.

The breadth of § 5–604 can not be questioned; it specifically states that it applies to "any act or omission [of a fire or rescue company, or their personnel] in the course of performing their duties." Nor is there any doubt as to who falls within its grant of immunity. The statute clearly and unequivocally refers to fire or rescue companies; there is no differentiation at all between public and private companies. Indeed, as we have seen, the statute started with that limitation, at its introduction it applied only to volunteer companies, but ended without it, indicating the Legislature's intention, arrived at during the passage of the legislation through the General

Assembly, to broaden its coverage. Of course failure to give effect to the real intention of the Legislature is a clear violation of the rules. Interpreting § 5–604 broadly is neither unreasonable nor illogical, nor a failure to bring common sense to the construction of the statute.

Indeed, an examination of the intent behind § 5–604 leads to the opposite conclusion than the respondents draw. The first amendment made to Senate Bill 731, as seen in notes from the Judicial Proceedings Committee, was the striking of the word "volunteer" as a modifier of fire and rescue companies. The decision to broaden the language of the subject, to simply "fire and rescue companies", clearly indicates a conscious choice to grant immunity to all employed by such companies, and not restrict the grant to only those in volunteer companies. In addition, Senate Bill 731 was considered along with Senate Bill 659, which conferred immunity in negligence actions on operators of emergency vehicles. SB 659 included both government and volunteer vehicles under its grant of immunity. That perhaps provides some insight as to why, in SB 731, the limitation to "volunteer" fire and rescue companies, was dropped.

Thus, it is clear that, whether looking at the plain language of § 5–604, or looking at its legislative intent, § 5–604 grants, and was intended to grant, immunity to fire and rescue companies, be they municipal, or volunteer.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DECIDE THE ISSUE OF GROSS NEGLIGENCE WHICH WAS NOT PREVIOUSLY RESOLVED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*

RAKER, Judge, dissenting.

Because I conclude that the Fire and Rescue Company Act, Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) § 5–604 of the Courts and Judicial Proceedings Article, affords Petition-

ers no immunity, I would affirm the judgment of the Court of Special Appeals. Accordingly, I respectfully dissent.

Section 5–604 grants qualified immunity from civil liability for negligence to fire and rescue companies and their personnel. It provides, in pertinent part, as follows:

(a) *Immunity from Civil Liability.*—Notwithstanding any other provision of law, except for any willful or grossly negligent act, a fire company or rescue company, and the personnel of a fire company or rescue company, are immune from civil liability for any act or omission in the course of performing their duties.

The Court of Special Appeals held that § 5–604 does not apply to municipal fire and rescue departments. *Chase v. Baltimore*, 126 Md.App. at 442, 730 A.2d at 247. The Court of Special Appeals was correct. Respondents argue that when § 5–604 is considered in its context within the Maryland Code and its legislative history, it becomes apparent that the Court of Special Appeals was correct in holding that § 5–604 applies to volunteer fire and rescue companies and to private fire companies and their personnel, but not to municipal fire and rescue companies. I agree.

The Court of Appeals has repeatedly stated that the cardinal rule of statutory interpretation is to ascertain and to give effect to the intent of the Legislature. *See Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). In determining the intent of the legislature, we look first to the statutory language, and if that is plain and admits of no more than one meaning, our function is to enforce it according to its terms. *See Board of License Comm'rs v. Toye*, 354 Md. 116, 122, 729 A.2d 407, 410 (1999); *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997). This has become known as the "plain-meaning rule." *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 633 (1987). The rule is not absolute, however. In this regard, we observed that

While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of

construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided.

*Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992) (citations omitted). A term "may be free from ambiguity when used in one context but of doubtful application in another context." *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 74, 517 A.2d 730, 732 (1986). This Court recently stated that "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence.'" *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in original) (quoting *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989)). The Court has held that

> [w]here the statute to be construed is part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. When, in that scheme, two statutes, enacted at different times and not referring to each other, address the same subject, they must be read together, *i.e.,* interpreted with reference to one another, and harmonized, to the extent possible, both with each other and with the statutory scheme.

*Government Employees Insurance Co. v. Insurance Com'r,* 332 Md. 124, 131–32, 630 A.2d 713, 717–18 (1993) (citations omitted).

Although there are times when the statutory language is clearly consistent with the apparent purpose of the legislature and further research is not necessary, there are other times when more extensive inquiry is required. *See Kaczorowski,* 309 Md. at 515, 525 A.2d at 633. The Court has recognized

that "the purpose, in short, determined in light of the statute's context, is the key." *Id.*[1]

In this case, contrary to the majority's view, it is not possible to rely on plain meaning alone in interpreting the statute. First, the term "company" presents an interpretive difficulty. Within this statute, this term is not defined by the Legislature, and the word's meanings in common usage are multiple. The definitions range from "[a] corporation—or, less commonly, an association, partnership or union—that carries on a commercial or industrial enterprise," BLACK'S LAW DICTIONARY 274 (7th ed.1999), to "an assemblage or association of persons or things," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 461 (1963), and, indeed, to "a fire-fighting unit," *id.* Nor is usage of the term "company" in connection with fire and rescue activities in the Maryland Code entirely uniform; often it refers specifically to volunteer fire and rescue units, *see, e.g.,* Maryland Code (1975, 1999 Repl.Vol.) § 1–203.1 of the Corporations and Associations Article (creating exemption from recording fees for volunteer fire companies), but sometimes it refers to both volunteer and non-volunteer units, *see, e.g.,* Maryland Code (1978, 1999 Repl.Vol.) § 13–509 of the Education Article (providing for comment by "volunteer and career fire companies" on regulations proposed by the Emergency Medical Services Board).

The meaning of § 5–604 is made even more unclear when § 5–604 is read in conjunction with the Good Samaritan Act, Maryland Code (1974, 1998 Repl.Vol., 1999 Supp.) § 5–603 of

---

**1.** We noted in *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987) that

in *State v. One 1983 Chevrolet Van,* 309 Md. 327, 524 A.2d 51 (1987) .... [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." We identified that scheme or purpose after an extensive review of the context of Ch. 549, Acts of 1984, which had effected major changes in Art. 27, § 297. That context included, among other things, a bill request form, prior legislation, a legislative committee report, a bill title, related statutes and amendments to the bill.

*Id.* at 515, 525 A.2d at 633 (citations omitted).

the Courts and Judicial Proceedings Article. The words "[n]otwithstanding any other provision of law" in § 5–604(a) do not imply that § 5–604 is not to be read in the context of other statutes, as the majority appears to suggest. These words only mean that if a preexisting provision of law conflicts with § 5–604, then § 5–604 prevails. The words do not abrogate the practice of reading statutes in context.

Reading § 5–604 in conjunction with § 5–603 simply shows that the meaning of § 5–604 is not so plain that it can be interpreted without the assistance of the legislative history. In one respect, the enactment of § 5–604 would have duplicated immunity created by § 5–603, if the Legislature had intended that emergency medical services provided by municipal fire departments be covered by § 5–604. As the Court of Special Appeals stated,

> City paramedics and firefighters providing emergency medical care or assistance were already afforded immunity under the Good Samaritan Act [i.e., § 5–603], where applicable. Although the Good Samaritan Act limited the immunity to acts provided "without fee or compensation," the City of Baltimore did not have authority to charge such fees until 1 July 1989. *See* Baltimore City Code, Art. 9, § 12A (1995 Supp.).

*Chase,* 126 Md.App. at 443, 730 A.2d at 248. To this extent, emergency rescue services provided by municipal fire departments were already covered by an immunity statute. In another respect, § 5–604 would have conflicted with § 5–603 if the legislature had intended § 5–604 to cover municipal fire departments. Because § 5–604 grants immunity regardless of whether a fee was charged for services, "its application to municipal fire departments would circumvent the fee restriction imposed by the Good Samaritan Act," as the Court of Special Appeals observed. *Id.* at 444, 730 A.2d at 248.

The meaning of § 5–604 thus remains unclear, and it is appropriate to turn to the legislative history in an attempt to ascertain the intent of the Legislature. Section 5–604 was

Senate Bill 731 of the 1983 session of the General Assembly. The legislative history of the statute was recounted well by Judge Rodowsky, writing for this Court in *Washington Suburban Sanitary Com'n v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 569, 520 A.2d 1319, 1326 (1987). It reveals that § 5–604 was enacted in response to the holding of the Court of Special Appeals in *Utica Mutual Insurance Co. v. Gaithersburg–Washington Grove Fire Department, Inc.,* 53 Md.App. 589, 455 A.2d 987 (1983), that volunteer fire companies are not necessarily governmental entities and therefore may not be covered by governmental immunity, and may be liable to suit. *See* Senate Judicial Proceedings Committee, Report on Senate Bill 731, at 2 (1983). As to the history, we said:

Courts & Judicial Proceedings Art. § 5–309.1 [recodified at § 5-604] was Senate Bill 731 of the 1983 Session of the General Assembly. The file of the Senate Judicial Proceedings Committee on S.B. 731 reflects that the legislation was a response to *Utica Mutual Insurance Co. v. Gaithersburg–Washington Grove Fire Department, Inc.,* 53 Md.App. 589, 455 A.2d 987, *cert. denied,* 296 Md. 224 (1983). *Utica Mutual* was a negligence action brought by a fire insurance company, as subrogee of its insured, against a fire company for alleged negligence in failing properly to extinguish a fire which later reignited leading to a second fire. The circuit court had held that the fire company enjoyed governmental immunity but the Court of Special Appeals reversed, holding that whether a fire company enjoyed governmental immunity was a question of fact on which the fire company in *Utica Mutual* had failed to produce sufficient evidence. The intermediate appellate court decided *Utica Mutual* on February 2, 1983, and on February 3, 1983, a member of the Maryland Senate requested the Department of Legislative Reference to prepare a bill granting immunity to volunteer firefighters. As introduced the bill provided that "[a] volunteer fire company is immune from liability in the same manner as a local government agency for any act or omission in the course of performing its duties if [ ] the act or

omission is not one of gross negligence...." The bill was amended in the course of passage to its present form. 308 Md. at 569, 520 A.2d at 1326.

It is apparent from this history that in passing § 5–604 the Legislature was responding to *Utica Mutual,* and intended to displace that decision by extending to non-governmental fire companies and their personnel the immunity that the common law at that time conferred on their governmental counterparts. This logic is perhaps less obvious today than it would have been at the time of the passage of § 5–604, because local governmental immunity was subsequently waived to a significant extent, *see, e.g., Downey v. Collins,* 866 F.Supp. 887, 889 n. 3 (D.Md.1994); *Ashton v. Brown,* 339 Md. 70, 107–08, 660 A.2d 447, 465–66 (1995), by the passage of the Local Government Tort Claims Act (LGTCA) in 1987. 1987 Maryland Laws ch. 594 (codified as amended at Maryland Code (1974, 1998 Repl.Vol., 1999 Supp) §§ 5–301 to 5–304 of the Courts and Judicial Proceedings Article). The individuals and entities to which § 5–604 extends immunity today have greater immunity than their governmental counterparts, on account of the waiver effect of the LGTCA. But when we look back to the situation that existed at the time of § 5–604's passage, it is apparent that the point of that enactment was to give non-governmental firefighters and fire companies the same immunity that then existed for their governmental counterparts. I therefore conclude that the Legislature's attention was confined to this objective, and that § 5–604 covers non-governmental individuals and organizations only, and does not create immunity for governmental personnel and organizations that would have been duplicative at the time of enactment.

This point is reinforced by the fact that when the Legislature did intend, in § 5–603, to create duplicative immunity for government-employed paramedics, it did so by naming them explicitly. Section 5–603 confers immunity, as noted above, on "[a] member of any State, county [or] municipal ... fire department, ambulance and rescue squad or law enforcement agency." Section 5–604 contains no comparable language.

The majority says that in *Washington Suburban Sanitary* we "reject[ed] the Fire Company's argument that [the Fire and Rescue Company Act's] purpose was to reinstate the governmental immunity volunteer companies enjoyed before the *Utica* decision." This is not the proposition we rejected. In *Washington Suburban Sanitary* we said that "Fire Co. is mistaken in its premise that volunteer fire companies generally enjoyed immunity from liability for negligence as instrumentalities exercising a governmental function." *Washington Suburban Sanitary Com'n,* 308 Md. at 570, 520 A.2d at 1326. We went on to point out that Prince George's County had waived governmental immunity, so that the Riverdale Heights Volunteer Fire Company would not have been immune even if it had been an instrumentality of the county. Thus, our point was that volunteer companies never necessarily had governmental immunity before *Utica Mutual,* and those in Prince George's County in particular could not have, because of the waiver. *See id.* We did *not* say that it was not the purpose of the Fire and Rescue Company Act to confer immunity on volunteer companies.

The fact, noted in *Utica Mutual, see* 308 Md. at 569, 520 A.2d at 1326, that the bill that became § 5–604 at first referred to "a volunteer fire company or rescue company" but was later amended to refer simply to "a fire company or rescue company" does not alter the analysis. I agree with the Court of Special Appeals that "[a]lthough the term "volunteer" was not included in the final form adopted by the General Assembly, this alone does not presume that the legislature intended to extend the immunity to state, county, or municipal fire departments." *Chase,* 126 Md.App. at 433, 730 A.2d at 247–48. The Attorney General's opinion analyzing a proposed City of Annapolis ambulance fee ordinance examined this issue:

The City Attorney has expressed doubt ... that CJ § 5–309.1 [now codified as § 5–604] applies to municipal fire departments, and we share that doubt. As we discussed in our prior opinion, "[t]he history of [§ 5–604] indicates that it constituted the legislative response to a decision by the

Court of Special Appeals holding that volunteer fire companies are not considered governmental entities entitled to immunity, and that volunteer firemen are not public officials for the purpose of governmental immunity." Opinion No. 87–055, at 6 n. 6. When the bill was introduced, it expressly limited the grant of immunity to "volunteer" fire companies. *See* Senate Bill 731 of the 1983 Session. According to the hearing summary of the Senate Judicial Proceedings Committee, "the purpose of this bill is to protect volunteer fire departments from liability arising from suits which do not involve acts of gross negligence." The committee then adopted an amendment that deleted the original provisions and extended the immunity to fire and rescue companies, without the modifier "volunteer." Nevertheless, even after the amendment, the committee identified the "background" problem as the fact that "few people would volunteer to serve the fire departments, if they realized that they could be subject to liability for their acts."

80 Op. Att'y Gen. No. 95–020 (June 9, 1995).

In sum, the Court of Special Appeals held § 5–604 does not apply to municipal fire and rescue departments. I agree, and would hold that § 5–604 therefore affords Petitioners no immunity.

Judge ELDRIDGE and Judge WILNER have authorized me to state that they join in the views expressed in this dissenting opinion.