788 A.2d 227

**Sheree DYER, et al.,**

v.

**Eva CRIEGLER, et al.**

No. 2856, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Jan. 3, 2002.

110

Joseph B. Espo (Brown, Goldstein & Levy, LLP, on the brief), Baltimore, for appellant.

Alvin C. Monshower, Jr., Richard L. Miller, Jr. and Monshower, Miller & Magrogan, LLP, Columbia, for amicus curiae, The Maryland Ass'n of Realtors, Inc.

Catherine A. Potthast (Nolan, Plumhoff & Williams, Chtd., Towson, Thomas M. Wood, IV and Jason M. St. John and Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, on the brief), for appellees.

Argued before JAMES R. EYLER, KRAUSER and RAYMOND G. THIEME, Jr. (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

The primary question before us is whether a real estate agent or broker who lists and promotes residential property for rental is an "owner" within the meaning of legislation passed in 1994 addressing the problem of deteriorated lead paint in older rental housing. *See* Md.Code, Env., §§ 6–801— 6–852 (1996, 2000 Supp.) [hereinafter Lead Paint Act or the Act]. We answer that question in the negative. We also hold that the Consumer Protection Act, Md.Code, Com. Law, §§ 13–101—13–501 (1997, 2000 Supp.), does not apply to real estate agents or brokers.

## Factual Background

On September 12, 2000, appellant Sheree Dyer, as mother and next friend of her minor daughter, Erielle Wallace, filed suit against Marilyn Gibson, Eva Criegler, and appellee Otis Warren Real Estate Services in the Circuit Court for Baltimore City. Appellant contended that Erielle Wallace suffered from lead paint poisoning and sought damages based on (1) negligence and (2) violation of the Consumer Protection Act.

Appellant alleged that Erielle Wallace was exposed to lead paint in a house located at 3408 Springdale Avenue that was rented to Ms. Dyer's parents, Henry and Rosalee Goodall. The house was owned by Ms. Gibson and Ms. Criegler. Ms.

Dyer and Erielle Wallace lived in the house with the Goodalls for approximately one year, beginning in December 1997. Appellee served as the "rental agent" in connection with the lease between Ms. Gibson and Ms. Criegler as landlords and the Goodalls as tenants. On November 6, 2000, appellant voluntarily dismissed her claims, without prejudice, against Ms. Gibson, and on February 13, 2001, she voluntarily dismissed her claims, without prejudice, against Ms. Criegler.

Appellee filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, arguing that it owed no duty to Erielle Wallace. In response, appellant argued that appellee's duty existed by virtue of two statutes, the Lead Paint Act and the Consumer Protection Act. At the hearing on the motion, appellant's counsel indicated that appellee acted strictly as a real estate agent or broker involved in promoting and listing the property for rental and had no on-going relationship with the property owners with respect to control over, or management of, the property. The circuit court granted appellee's motion to dismiss and ruled as a matter of law that neither the Lead Paint Act nor the Consumer Protection Act placed a duty on real estate agents or brokers, whose sole involvement was to promote and facilitate the rental of housing, to protect tenants from lead paint exposure. On February 13, 2001, appellant noted an appeal to this Court. We shall affirm the circuit court's ruling.

## Question Presented

Did the Circuit court err in granting appellant's motion to dismiss and holding that the Lead Paint Act and the Consumer Protection Act were inapplicable to real estate agents or brokers effecting the rental of residential property?

## Standard of Review

Our review of the Circuit court's grant of a motion to dismiss for failure to state a claim is limited to whether the Circuit court was legally correct. *See Fioretti v. Maryland State Board of Dental Examiners*, 351 Md. 66, 71, 716 A.2d 258 (1998). All well-pleaded facts in the complaint, as well as

all inferences that can be drawn therefrom, are presumed to be true, and dismissal is appropriate only if a legally sufficient claim is not present. *See Green v. H & R Block, Inc.,* 355 Md. 488, 501, 735 A.2d 1039 (1999); *Bobo v. State,* 346 Md. 706, 708–09, 697 A.2d 1371 (1997).

## Discussion

### A. Lead Paint Act

In order to establish a negligence claim, the plaintiff must demonstrate:

'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached the duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'

*Sadler v. The Loomis Co.,* 139 Md.App. 374, 396, 776 A.2d 25 (2001) (citations omitted). Whether a defendant owes a plaintiff a legally cognizable duty is a threshold question to be decided by the trial court as a matter of law. *See id.; Bobo,* 346 Md. at 714, 697 A.2d 1371.

The facts alleged in appellant's complaint, presumed to be true for purposes of appellee's motion to dismiss, are that (1) while appellant and Erielle Wallace were living at 3408 Springdale Avenue, "quantities of peeling lead-based paint, loose lead-based paint chips, and lead-based paint powder were exposed on the interior and exterior surfaces of the house," (2) appellee knew about the existence of the lead-based paint, (3) appellee "failed to correct the conditions that resulted in the exposure of Erielle Wallace to lead-based paint," (4) Erielle Wallace ingested lead-based paint, and (5) Erielle Wallace suffered from lead poisoning, resulting in brain damage and other behavioral and developmental injuries. The primary question of law before the Circuit court, and hence before us on appeal, was whether appellee, serving only as a rental agent, had a duty to prevent Erielle Wallace's exposure to lead-based paint.

■ Appellant claims that the Lead Paint Act places a statutory duty of care upon real estate agents and brokers involved in renting properties,[1] and that a violation of the Act results in a presumption of negligence.

Under the Lead Paint Act, rental properties built before 1950 must be registered with the State Department of the Environment. *See* Md.Code, Env., § 6–811. The purpose of the Act was "to reduce the incidence of childhood lead poisoning, while maintaining the stock of available affordable rental housing." Md.Code, Env., § 6–802. Consistent with that purpose, the Act requires property "owners" to take specific precautionary measures, including maintenance and repair, to reduce the risk of tenant exposure to lead-based paint. In exchange for compliance, the Act provides limited liability to "owners" if a tenant suffers from lead poisoning and commences a lawsuit. *See* Md.Code, Env., §§ 6–815—6–836.

Appellant relies on the definition of "owner" in Env. § 6–801 to support the contention that a real estate agent or broker is bound by the terms of the Act. For purposes of the Act, the term "owner" has a broader meaning than when used in the traditional sense, as outlined in section 6–801(*o*):

(1) "Owner" means a person, firm, corporation, guardian, conservator, receiver, trustee, executor, or legal representative who, alone or jointly or severally with others, owns,

---

1. A licensed real estate broker may engage in any of the following activities: "(1) for consideration, providing any of the following services for another person: (i) selling, buying, exchanging, or leasing any real estate; or (ii) collecting rent for the use of any real estate; (2) for consideration, assisting another person to locate or obtain for purchase or lease any residential real estate; (3) engaging regularly in a business of dealing in real estate or leases or options on real estate; (4) engaging in a business the primary purpose of which is promoting the sale of real estate through a listing in a publication issued primarily for the promotion of real estate sales; (5) engaging in a business that subdivides land that is located in any state and sells the divided lots; or (6) for consideration, serving as a consultant regarding any activity set forth in items (1) through (5) of this subsection." Md.Code, Business Occupations and Professions, § 17–101(k)(1)–(6). A real estate salesperson may provide the services identified above on behalf of a broker with whom the person is affiliated. Business Occupations and Professions, § 17–101(j).

holds, or controls the whole or any part of the freehold or leasehold interest to any property, with or without actual possession.

(2) "Owner" includes:

(i) Any vendee in possession of the property; and

(ii) Any authorized agent of the owner, including a property manager or leasing agent.

(3) "Owner" does not include:

(i) A trustee or a beneficiary under a deed of trust or a mortgagee; or

(ii) The owner of a reversionary interest under a ground rent lease.

Appellant asserts that because "leasing agent" is expressly included in the definition of an "owner" and because appellee acted as a "leasing agent" in procuring the lease for the property at 3408 Springdale Avenue, the Act governs appellee and establishes a statutory duty of care. Appellee, on the other hand, maintains that the entire definition must be read as a whole, meaning that only a "leasing agent" who "owns, holds, or controls" the property is covered by the Act. The circuit court determined that "it would be really unreasonable to try to incorporate brokers into that [section 6–801(o)'s] definition [of "owner"] when the broker's responsibility ceases at the time that he fulfills his contractual obligation; that being, connecting a tenant to the landlord."

In order to evaluate whether the circuit court was legally correct in holding that a real estate agent or broker, under the circumstances presented, is not an "owner" under the Lead Paint Act, we must interpret the statute. The primary goal of statutory construction " 'is to ascertain and effectuate the intention of [the] Legislature.' " *Board of License Commissioners v. Toye,* 354 Md. 116, 122, 729 A.2d 407 (1999)(quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995)). The language of the statute is the starting point when ascertaining legislative intent. *See Marriott Employees Federal Credit Union v. Motor Vehicle Administration,* 346 Md. 437, 444–45, 697 A.2d 455 (1997). If the text of the

statute is free from ambiguity, courts normally will not go beyond that language in an attempt to discover legislative intent. *See Toye,* 354 Md. at 122, 729 A.2d 407. When a statute contains an ambiguity, a court may look to the statutory scheme as a whole, as well as the purposes behind enactment. *See Marriott,* 346 Md. at 445, 697 A.2d 455.

We begin by examining the definition of "owner" in the Act itself. An "owner" includes a "leasing agent" but only one who "owns, holds, or controls the whole or any part of the freehold or leasehold interest" in the property in question. Md.Code, Env., § 6–801(*o*)(1), (2). There are no reported Maryland cases addressing the definition of "owner" under the Lead Paint Act, but the phrase "holds or controls" carries with it a requirement that the entity in question have an ability to change or affect the condition of the property.

Looking beyond the definition of "owner", we find that the entire statutory scheme suggests that the Lead Paint Act applies only to those with the right to control the property. For instance, section 6–815 outlines the necessary steps an "owner" must take to be in compliance with the risk reduction standards. The protective measures include a "visual review of all exterior and interior painted surfaces," removing all flaking paint, repainting, repairing all structural defects causing paint to flake, and other physical changes, all of which necessarily require an "owner" to exercise control. Sections 6–820(c) and 6–823(c) both mandate that an "owner" issue required notices every two years to tenants. Because real estate agents' and brokers' relationships typically end once the lease is signed, agents and brokers, in that situation, do not have the continuous relationship contemplated by these notice provisions. In sum, the Act places duties on "owners" that a person or entity without the right to control the property would be unable to comply with, thereby indicating that the Legislature did not intend real estate agents or brokers, acting only to list and promote properties, to be considered "owners" for purposes of the Act.

In lead paint cases, courts that have evaluated negligence claims based on common-law principles and applicable ordinances have held property management entities and titled property owners liable. *See, e.g., Brown v. Dermer*, 357 Md. 344, 744 A.2d 47 (2000); *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 645 A.2d 1147 (1994); *Forrest v. P & L Real Estate Investment Co.*, 134 Md.App. 371, 759 A.2d 1187 (2000). To our knowledge, a real estate agent or broker, acting to list, promote, and effect a sale or rental of property, without the right to manage or control the property, has not been held liable in such cases.

■ This is consistent with common law principles of premises liability as the basis for imposition of tort liability is the possession and/or control of property. The Court of Appeals has explained, "it is the possession of property, not the ownership, from which the duty flows." *Baltimore Gas & Electric Co. v. Lane*, 338 Md. 34, 45, 656 A.2d 307 (1995), *overruled in part on other grounds, Baltimore Gas & Electric Co. v. Flippo*, 348 Md. 680, 705 A.2d 1144 (1998). Possession includes "both the present intent to control the object [or property] and some ability to control it." *Id.* at 46, 656 A.2d 307 (citing *Restatement (Second) of Torts*, §§ 216, 328 E.; *Rowley v. Mayor and City Council of Baltimore*, 305 Md. 456, 464, 505 A.2d 494 (1986)).

In her complaint, appellant referred to several provisions of the Baltimore City Code, but she did not argue them on appeal. Nevertheless, because the property at issue in the instant appeal is located in Baltimore City, the Housing Code of Baltimore City [hereinafter the Housing Code] is relevant. The Housing Code mandates, "[a]ny person deemed to be the owner within the meaning of the definition of said term, shall be bound to comply with the provisions of this Code to the same extent as if he were the actual owner." Housing Code, Art. 13, § 301(d) (2000 ed.). In defining "owner," the Housing Code uses language nearly identical to that found in the Lead Paint Act. *See* Housing Code, Art. 13, § 105(jj) (2000 ed.); Md.Code, Env., § 6–801(*o*). The key difference, however, is

the exclusion from the Housing Code of the term "leasing agent" from those other than the holder of legal title who are nevertheless considered an "owner" for liability purposes.

 Lastly, we look to the general law governing liability of real estate agents and brokers. Generally speaking, a real estate agent's or broker's liability is founded on the law of agency. *See Proctor v. Holden,* 75 Md.App. 1, 18, 540 A.2d 133 (1988). Brokers and agents ordinarily owe a fiduciary duty to their principals. *See id.* at 21, 540 A.2d 133. In the absence of special circumstances, there is no duty imposed on agents or brokers, acting for a seller, to investigate and ascertain if any defects exist on the property in question and to disclose any such defects to a buyer. *See Herbert v. Saffell,* 877 F.2d 267, 275 (4th Cir.1989)("we hesitate to impose a duty on realtors to investigate property and report defects to prospective buyers because such an obligation could conflict with the fiduciary duties that realtors normally owe to property sellers under Maryland law," citing *Proctor,* 75 Md.App. at 21, 540 A.2d 133). *See also Lopata v. Miller,* 122 Md.App. 76, 91–92, 712 A.2d 24 (1998); *Lewis v. Long & Foster Real Estate, Inc.,* 85 Md.App. 754, 763, 584 A.2d 1325 (1991). While the case *sub judice* concerns the rental of property rather than the sale of property, there is no reason or authority to support imposing a different duty on real estate agents or brokers who facilitate the rental of property.

 Based on the above discussion, we agree with appellee and the circuit court that the Lead Paint Act's definition of an "owner" must be read as a whole, meaning that only a leasing agent who owns, holds, or controls at least part of the property in question constitutes an "owner." This does not mean that actual possession is required, as the Act makes clear, but it does mean that there must exist the right to hold or control the property. Contrary to appellant's assertions, the Lead Paint Act does not impose a duty of care on real estate agents or brokers acting, as appellee was in the case *sub judice,* merely as listing agents. To impose such a duty on agents and brokers would be contrary to common law

principles of premises liability and real estate agents' and brokers' liability, the statutory scheme of the Lead Paint Act, and local ordinances, for which we would need a clear indication from the Legislature. The statutory language on which appellant relies, "leasing agent," taken out of context, is an insufficient demonstration of the Legislature's intent to alter established law. Appellant, therefore, has failed to establish the prerequisite duty upon which a negligence claim must be based, and we affirm the trial court's grant of appellee's motion to dismiss.

### B. Consumer Protection Act

Appellant's reliance on the Consumer Protection Act to support a claim is misplaced because the statute explicitly exempts real estate salespersons and brokers. Section 13–104 states, "[t]his title does not apply to: (1) the professional services of a ... real estate broker, associate real estate broker, or real estate salesperson." *See also Lopata v. Miller*, 122 Md.App. at 93, 712 A.2d 24 (this Court refusing to consider claims against real estate agents brought under the Act because "the Maryland Consumer Protection Act specifically exempts real estate agents and brokers from its provisions"). The circuit court, therefore, was correct in holding that appellant failed to state a legally sufficient claim under the Consumer Protection Act, and we affirm.

### C. Leave to Amend

With the exception of one allegation, appellant did not request leave to amend the complaint. The one exception is that appellant requested leave to amend to allege that the property in question had not been registered under the Lead Paint Act. For purposes of our analysis, we assume that allegation to be part of the complaint. Based on the representations of counsel, it appears there are no additional relevant facts that could be pleaded.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**