810 A.2d 938

**Sheree DYER, as mother and next friend of Erielle Wallace, a minor,**

v.

**OTIS WARREN REAL ESTATE CO.**

No. 3, Sept. Term 2002.

Court of Appeals of Maryland.

Nov. 8, 2002.

Joseph B. Espo (Brown, Goldstein & Levy, LLP, on brief), Baltimore, for petitioner.

Catherine A. Potthast (Nolan, Plumhoff & Williams, Chtd of Towson, Thomas M. Wood, IV and Jason M. St. John of Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., on brief), Baltimore, for respondent.

Anne Blumenberg, Ann Steinberg, Community Law Center, Inc. Baltimore, for Brief of Community Law Center, Inc. on behalf of Petitioners, Amicus Curiae.

Alvin C. Monshower, Jr., Richard L. Miller, Monshower, Miller & Magrogan, LLP, Columbia, for Brief of the Maryland Association of Realtors, Inc. Amicus Curiae on behalf of Respondents.

Argued before BELL, C.J. ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA JJ.

BELL, Chief Judge.

The issue that we resolve in this opinion is the applicability to a leasing agent or real estate broker of Maryland's Lead Poisoning Prevention Act, Maryland Code (1974, 1996 Repl. Vol., 2000 Cum. Supp.) § 6–801(o) of the Environment Article.[1] Consistent with the conclusions reached by the Circuit Court for Baltimore City and the Court of Special Appeals, *see Dyer, et al. v. Criegler, et al.,* 142 Md.App. 109, 788 A.2d 227 (2002), we shall hold that a leasing agent or real estate broker, who neither owns, holds or controls the rental property, is not an

---

1. Unless otherwise indicated, future references will be to Md.Code (1974, 1996 Repl.Vol., 2000 Cum.Supp.) of the Environment Article.

"owner" as defined in § 6 801(*o*).[2] Accordingly, we shall affirm the judgments of those courts.

## I.

Sheree Dyer, the petitioner, is the mother and next friend of her minor child Erielle[3] T. Wallace, on whose behalf this action was brought. Marilyn M. Gibson and Eva Criegler are the owners of # 3408 Springdale Avenue. Otis Warren Real Estate Co. (sometimes referred to as "Otis Warren"), the respondent, was the "leasing agent" or "real estate broker" for those premises, which it leased to Henry Goodall and Rosallee Goodall, Erielle Wallace's grandparents. From approximately December 1997 until December 1998, Erielle Wallace resided at # 3408 Springdale Avenue with her mother and grandparents. It is alleged that, during this time and at the leased premises, Erielle Wallace was exposed to, and injured by, lead based paint.

The petitioner filed suit in the Circuit Court for Baltimore City against Criegler, Gibson[4] and the respondent Otis War-

---

2. Maryland Code (1973, 1996 Repl.Vol.2000 Cum.Supp.) § 6–801(*o*) of the Environment Article provides:

 "(*o*) 'Owner.'—(1) 'Owner' means a person, firm, corporation, guardian, conservator, receiver, trustee, executor, or legal representative who, alone or jointly or severally with others, owns, holds, controls the whole or any part of the freehold or leasehold interest to any property, with or without actual possession.

 "(2) 'Owner' includes:

 "(i) Any vendee in possession of the property; and

 "(ii) Any authorized agent of the owner, including a property manager or leasing agent.

 "(3) 'Owner' does not include:

 "(i) A trustee or a beneficiary under a deed of trust or a mortgagor; or

 "(ii) The owner of reversionary interest under a ground rent lease."

3. On some court documents, this name was also spelled "Eriell."

4. In November, 2000, the petitioner voluntarily dismissed her claims, without prejudice, against Gibson, and in February, 2001, she voluntarily dismissed her claims, without prejudice, against Criegler. Consequently, only Otis Warren is a respondent in this Court in connection with this appeal.

 

ren, alleging that Erielle Wallace suffered damages from lead paint poisoning and seeking damages for negligence and violation of the Consumer Protection Act, Maryland Code (1975, 1992 Replacement Volume, 2001 Cumulative Supplement), Title 13 of the Commercial Law Article. Otis Warren filed a motion pursuant to Maryland Rule 2–322(b) [5] to dismiss the complaint for failure to state a claim upon which relief could be granted. The Circuit Court granted that motion and ruled, as a matter of law, that neither the Lead Paint Act nor the Consumer Protection Act placed a duty on Otis Warren, whose sole responsibility was to provide a tenant for the landlord. It reasoned that, "it would be unreasonable to incorporate brokers into that definition [of owner] when the broker's responsibility ceases at the time that he fulfills [t]he contractual obligation."

The petitioner noted an appeal to the Court of Special Appeals. That court "agree[d] with appellee and the circuit court that the Lead Paint Act's definition of an 'owner' must be read as a whole, meaning that only a leasing agent who owns, holds, or controls at least part of the property in question constitutes an 'owner'." 142 Md.App. at 119, 788 A.2d at 233–34 (2002).[6]

 Since this case is about the meaning and, thus, the effect, of § 6–801(*o*), it is governed by well settled canons of statutory construction. The goal with which we approach the

---

**5.** Maryland Rule 2–322(b) provides:

"(b) Permissive. The following defenses may be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) failure to join a party under Rule 2–211, (4) discharge in bankruptcy, and (5) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed."

**6.** The Court of Special Appeals also addressed the petitioner's reliance on the Consumer Protection Act and concluded that "the statute explicitly exempts real estate salespersons and brokers. . . . The circuit court, therefore, was correct in holding that appellant failed to state a legally sufficient claim under the Consumer Protection Act." *Id.* at 120, 788 A.2d at 234.

interpretation of a statute is to determine the intention of the Legislature in enacting it. The rules governing the conduct of that search are well settled and have been stated by this Court on many occasions. In *Mayor & City Council of Baltimore et al. v. Chase et al.* 360 Md. 121, 128, 756 A.2d 987, 991 (2000) (*quoting Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 578–79, 683 A.2d 512, 517–18 (1996)), this Court said, on the subject:

"[W]e begin our analysis by reviewing the pertinent rules [of statutory construction]. Of course, the cardinal rule is to ascertain and effectuate legislative intent. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448, 451 (1994); *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993). To this end, we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also. *Oaks, supra,* 339 Md. at 35, 660 A.2d at 429; *Buckman, supra,* 333 Md. at 523, 636 A.2d at 451; *Condon, supra,* 332 Md. at 491, 632 A.2d at 755; *Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993).

"Where the statutory language is plain and unambiguous, a court may neither add nor delete language so as to 'reflect an intent not evidenced in that language,' *Condon, supra,* 332 Md. at 491, 632 A.2d at 755, nor may it construe the statute with " 'forced or subtle interpretations' that limit or extend its application.' *Id.* (*quoting Tucker v. Fireman's Fund Insurance Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)). Moreover, whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. *Buckman, supra,* 333 Md. at 524, 636 A.2d at 452; *Condon, supra,* 332 Md. at 491, 632 A.2d at 755."

We have also recognized that a statute whose terms are unambiguous when considered by itself, may be rendered ambiguous when viewed in light of a related statute or when it

is part of a larger statutory scheme. *Chase, supra,* 360 Md. at 130, 756 A.2d at 992. The application of these canons to the interpretation of the statute at issue produces a clear, logical and predictable result.

The definition of "owner" is clear and unambiguous. The statute limits the definition of "owner" to one that owns, holds, or controls at least part of the property. That becomes clear when all three of § 6–801(*o*)'s subsections are read together and it is understood how they relate to each other.

The first subsection, § 6–801(*o*)(1), sets out the general definition of "owner": "a person, firm, corporation, guardian, conservator, receiver, trustee, executor, or legal representative who, alone or jointly or severally with others, owns, holds, or controls the whole or any part of the freehold or leasehold interest to any property, with or without actual possession." The critical aspect of the definition is that an "owner" must either "own, hold, or control" at least part of the property. Accordingly, under this definition, an individual can only be classified as an "owner" when that individual owns, holds or controls the property, or a part of it, at issue.

The second subsection, § 6–801(*o*)(2), provides guidance as to whom the term, "owner," as defined by § 6–801(*o*)(1) includes. It does so by giving examples of interests in property short of legal or equitable title that, for purposes of the statute, are treated as ownership: a vendee in possession of the property and an authorized agent of the owner, "including a property manager or leasing agent." It does not expand the definition of "owner" set out in subsection (*o*)(1), which it easily could have done by adding additional wording, such as: "whether or not the authorized agent owns, holds, or controls the whole or any part of the freehold or leasehold interest to any property, with or without actual possession" to the end of § 6–801(*o*)(2).

The third subsection, § 6–801(*o*)(3), provides: " '[o]wner' does not include: (i)[a] trustee or a beneficiary under a deed of trust or a mortgagee; or (ii)[t]he owner of a reversionary

interest under a ground rent lease." This Court has acknowledged that

> " 'The terms 'owner' and 'owning' depend somewhat for their signification upon the connection in which they are used. 'To own' is defined, 'to hold as property; to have a legal or rightful title to; to have; to possess.' And an owner is 'one who owns; a rightful proprietor.' An owner is not necessarily one owning the fee-simple, or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and, indeed, there may be different estates in the same property, vested in different persons, and each be an owner thereof.' "

*Weinberg v. Baltimore & Annapolis R.R. (Co.)*, 200 Md. 160, 166, 88 A.2d 575, 577–78 (1952), *quoting Baltimore & O.R.R. v. Walker*, 45 Ohio St. 577, 16 N.E. 475 (1888).

Thus, we have held that "at law the mortgagee is the owner of the property even if equity does for certain purposes treat him as merely having a lien on the land." *Mayor & City Council of Hagerstown v. Groh*, 101 Md. 560, 563, 61 A. 467, 468 (1905) (condemnation). *See Commercial Credit Corp. v. State*, 258 Md. 192, 198, 265 A.2d 748, 751 (1970) (same). *See also IA Construction Corp. v. Carney*, 341 Md. 703, 716–17, 672 A.2d 650, 657 (1996) (" '[A]s a consequence of the influence of equity upon law, the mortgagor, while in possession and before default, is now at law regarded as the substantial owner of the property against everybody, except the mortgagee.' '?(quoting Judge Eli Frank, in his work, *Title to Real and Leasehold Estates and Liens* (1912)); *Brittingham v. The Tugboat Underwriting Syndicate*, 262 Md. 134, 142, 277 A.2d 8, 12 (1971). Similarly, in *Moran v. Hammersla*, 188 Md. 378, 381–82, 52 A.2d 727, 728 (1947), this court referred to the holder of a ground rent lease as the owner of the land that leases it to the lessee for a certain period. This subsection consequently is a restriction on the definition of ownership, excluding interests in real property that, in the past and in other contexts, were classified by this Court as "ownership." Clearly, aware that these classes of persons have been classified as "owners" in the past, the Legislature did not want to

expose them to liability even though they own, hold or control the property.

## II.

■ The petitioner has a different interpretation of § 6–801(*o*). It is that a "leasing agent," without regard to control or actual ownership, is, by definition, pursuant to § 6–801(*o*)(2), an "owner." She submits that, because it is undisputed that the respondent was a leasing agent and, therefore, falls within the definition of "owner," the trial court "added a requirement not found in the statute that a leasing agent exercise a particular degree of control before liability may be found that the tenant's case was dismissed." (The petitioner's brief at 7).[7] Furthermore, the Petitioner argues, requiring a leasing agent, or the other persons identified in § 6–801(*o*)(2), to own, hold or control the property at issue renders that section superfluous or redundant. Additionally, the petitioner argues that § 6–801(*o*)(3)[8] excludes only certain individuals and, therefore, all other groups are deliberately left covered.

The viability of the petitioner's interpretation depends upon reading each of § 6–801(*o*)'s subsections separately and without reference to each other. All of her arguments essentially ignore § 6–801(*o*)(1). They are based on reading § 6–801(*o*)(2)(ii)[9] out of context, as if it were a definition of "owner"

---

7. The respondent concedes that some leasing agents or real estate brokers may have duties under the Maryland Lead Poisoning Prevention Act, but it maintains, that is relevant only "**if** that person **also** fits within the statutory definition of 'owner' as one who 'alone or jointly or severally with others, *owns, holds, or controls* the whole or any part of the freehold or leasehold interest to any property, with or without actual possession.' " (The respondent's brief at 14) (emphasis in original).

8. "(3) "Owner' does not include:
 (i) A trustee or a beneficiary under a deed of trust or a mortgagee; or
 (ii) The owner of reversionary interest under a ground rent lease."

9. "(2) 'Owner' includes: . . .
 (ii) Any authorized agent of the owner, including a property manager or leasing agent.

unto itself and not just a part of one. As we have pointed out, for the petitioner's interpretation to be adopted, consistent with the requirement of the rules of construction that the statute be read in context, there would need to be additional language added to § 6–801(*o*)(2) indicating that any authorized agent or leasing agent is always to be considered an "owner."

The Legislature did not include any such language, signaling that it intended for the persons listed in subsection (*o*)(2)(ii) to be considered "owners" only when they satisfy the requirements set out in subsection (*o*)(1). Any other interpretation would arbitrarily hold property managers and leasing agents to a higher standard than that to which actual owners of the property are held. In fact, the interpretation advocated by the petitioner could extend to any "authorized agent of the landlord" even if not associated in any way with the property. Clearly, this would lead to an illogical result.

Our interpretation is further supported by the fact that § 6–801(*o*) has a third subsection that excludes certain classes of persons that otherwise would satisfy the first subsection. That subsection, too, must be read in context with the other two subsections. As the respondent correctly states, and we have seen, the categories excluded in § 6–801(*o*)(3), mortgage holders and ground rent holders, are technically "owners" of an interest in the property because they hold a security interest for a loan or debt. The Legislature obviously excluded these classes of persons because even though they technically satisfy § 6–801(*o*)(1)'s definition of "owner," the Legislature did not want to expose them to liability because it does not comport with the Act's purpose "... to reduce the incidence of childhood lead poisoning, while maintaining the stock of available affordable rental housing." § 6–802. The trial court did not add any requirement on its own; rather, it simply read and applied the plain wording of the statute.

Petitioner argues that when the legislative history is considered, it is apparent that § 6–801(*o*) applies to all leasing agents even if they do not own, hold or control the property.

This court has addressed the use of legislative history in the following manner:

"[o]ur cases indicate that even when the language of a statute is free from ambiguity, 'in the interest of completeness we may, and sometimes do, explore the legislative history of the statute under review. *Harris v. State*, 331 Md. 137, 146, 626 A.2d 946, 950 (1993). We do so, however, to look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account. *Id.* In other words, the resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute. *See Coleman v. State*, 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ('a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature.')."

*Chase* at 131, 756 A.2d at 993.

The legislative history on which the petitioner relies does not support the conclusion that it is seeking.

The petitioner submits that an early draft of House Bill 760, which became Maryland's Lead Poisoning Prevention Act, included within the definition of "owner" "... property managers, leasing agents, and maintenance personnel." *See* Draft bill, January 24, 1994. As enacted, the statute excluded maintenance personnel and retained property managers and leasing agents. Noting this fact, the petitioner argues that it demonstrates that the Legislature consciously chose to retain leasing agents within the ambit of the law. While this may be an accurate historical account, it does not affect the interpretation of § 6–801(*o*).

Read in its entirety, § 6–801(*o*) is not a bit ambiguous as to its scope or its reach. Accordingly, giving the words of the statute their ordinary meaning, as we are required to do, *see Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore*, 343 Md. 567, 578, 683 A.2d 512, 517 (1996) ("we begin our

inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also"), it is clear that a leasing agent or real estate broker is considered an "owner" only when the requirements of § 6–801(*o*)(1) are satisfied.

### III.

Sections 6–815,[10] 6–820(c) [11] and 6–823(c) [12] were considered by the Court of Special Appeals in determining the

---

**10.** Maryland Code (1973, 1996 Repl.Vol., 2000 Cum.Supp.) § 6–815(a)(2) of the Environment Article provides:

"(a) No later than the first change in occupancy in an affected property that occurs on or after February 24, 1996, before the next tenant occupies the property, an owner of an affected property shall initially satisfy the risk reduction standard established under this subtitle by:

\* \* \* \*

"(2) [An owner shall perform] the following lead hazard reduction treatments:

"(i) A visual review of all exterior and interior painted surfaces;

"(ii) The removal and repainting of chipping, peeling, or flaking paint on exterior and interior painted surfaces;

"(iii)The repair of any structural defect that is causing the paint to chip, peel, or flake that the owner of the affected property has knowledge of or, with the exercise of reasonable care, should have knowledge of;

"(iv) Stripping and repainting, replacing, or encapsulating all interior windowsills with vinyl, metal, or any other material in a manner and under conditions approved by the Department;

"(v) Ensure that caps of vinyl, aluminum, or any other material in a manner and under conditions approved by the Department, are installed in all window wells in order to make the window wells smooth and cleanable;

"(vi) . . . [F]ixing the top sash of all windows in place in order to eliminate the friction caused by movement of the top sash;

"(vii) Rehanging all doors necessary in order to prevent the rubbing together of a lead painted surface with another surface;

"(viii) Making all bare floors smooth and cleanable;

"(ix) Ensure that all kitchen and bathroom floors are overlaid with a smooth, water-resistant covering; and

"(x) HEPA—vacuuming and washing of the interior of the affected property with high phosphate detergent or its equivalent, as determined by the Department."

**11.** Section 6–820(c) provides:

meaning of "owner" as defined in § 6–801(*o*). *See Dyer v. Criegler,* 142 Md.App. at 117, 788 A.2d at 232. As to them, it opined:

> "Looking beyond the definition of 'owner', we find that the entire statutory scheme suggests that the Lead Paint Act applies only to those with the right to control the property. For instance, section 6–815 outlines the necessary steps an 'owner' must take to be in compliance with the risk reduction standards. The protective measures include a 'visual review of all exterior and interior painted surfaces,' removing all flaking paint, repainting, repairing all structural defects causing paint to flake, and other physical changes, all of which necessarily require an 'owner' to exercise control. Sections 6–820(c) and 6–823(c) both mandate that an 'owner' issue required notices every two years to tenants. Because real estate agents' and brokers' relationships typically end once the lease is signed, agents and brokers, in that situation, do not have the continuous relationship contemplated by these notice provisions. In sum, the Act places duties on 'owners' that a person or entity without the right to control the property would be unable to comply with, thereby indicating that the Legislature did not intend real estate agents or brokers, acting only to list and promote properties, to be considered 'owners' for purposes of the Act."

*Id.* We agree with the Court of Special Appeals both as to the relevance of those sections to the construction of § 6 801(*o*) and its analysis of their effect on the definition of "owner."

---

"(c) An owner of an affected property shall give to the tenant of the affected property a notice, prepared by the Department, of the tenant's rights under §§ 6–817 and 6–819 of this subtitle at least every 2 years after last giving the notice to the tenant."

**12.** Section 6–823(c) provides:

"(c) An owner of an affected property shall give to the tenant of the affected property another copy of the lead poisoning information packet prepared or designated by the Department at least every 2 years after last giving the information packet to the tenant."

The petitioner argues first that "control" need not be established for the liability of a real estate broker or leasing agent to attach. If, however, "control" is a necessary fact to be proven, she submits that the respondent exercised sufficient "control." She relies on the facts that (1) the leasing agent delivered possession to the tenant coupled with an agreement allowing the tenant to purchase the property; (2) the leasing agent had sufficient "control" to comply with the Act's registration requirement; [13] and (3) the leasing agent delivered

---

13. Section 6–811 provides:

"(a)(1) On or before December 31, 1995, the owner of an affected property shall register the affected property with the Department. "(2) Notwithstanding paragraph (1) of this subsection, an owner of affected property for which an election is made under § 6–803(a)(2) of this subtitle shall register at the time of the election.

"(b) The owner shall register each affected property using forms prepared by the Department, including the following information: "(1) The name and address of the owner;

"(2) The address of the affected property;

"(3) If applicable, the name and address of each property manager employed by the owner to manage the affected property;

"(4) The name and address of each insurance company providing property insurance or lead hazard coverage for the affected property, together with the policy numbers of that insurance or coverage; "(5) The name and address of a resident agent, other agent of the owner, or contact person in the State with respect to the affected property;

"(6) Whether the affected property was built before 1950 or after 1949;

"(7) The date of the latest change in occupancy of the affected property;

"(8) The dates and nature of treatments performed to attain or maintain a risk reduction standard under § 6–815 or § 6–819 of this subtitle; and

"(9) The latest date, if any, on which the affected property has been certified to be in compliance with the provisions of § 6–815 of this subtitle.

"(c)(1) Subject to the provisions of paragraph (2) of this subsection, the information provided by an owner under subsection (b) of this section shall be open to the public.

"(2)(i) Except as provided in subparagraph (ii) of this paragraph, the Department may not disclose an inventory or list of properties owned by an owner.

certain documents required to be given to the tenants under both State and Federal law.

Delivering possession to a tenant coupled with an agreement allowing the tenant to purchase the property does not constitute the "control" contemplated by § 6–801(*o*). In *Brown v. Hogan,* 138 Md. 257, 113 A. 756 (1921), the owner of a house authorized his attorney to find a purchaser for his house at a specified price. The attorney executed, on behalf of the owner, a contract of sale with a purchaser. The attorney failed to notify the owner of the contract until after the owner had executed a contract to sell the property to another purchaser. This Court held that an agent does not have implied authority to execute a contract to sell real estate which is binding on the principal. *See also Miller v. Mueller,* 28 Md.App. 141, 147, 343 A.2d 922, 926 (1975), *cert. denied,* 276 Md. 747 (1975) ("The mere retention of an agent, broker or attorney, to procure a purchaser of real estate, or to negotiate the terms of a real estate transaction, does not confer upon the agent the implied authority to make a contract of sale.").

The lease in the case *sub judice* states:

"The Owner recognizes Otis Warren Real Estate Services as the Broker negotiating this Lease and agrees to pay said Broker a brokerage fee for services rendered in the amount provided for in the listing contract in the event of the purchase of the property by the Tenant or an agent or assign of the Tenant, Owner agrees to pay a sales brokerage fee in accordance with the listing contractor or in the absence thereof a sales brokerage fee in the amount of 6% of the purchase price to the above named broker."

Merely because the respondent was entitled to receive a commission in the event the tenant(s) purchased the property does not lead to the conclusion that the respondent maintained "control" over the property. The lease simply states that the broker will receive a commission; it does not clothe the

---

"(ii) The Department shall, upon request, disclose whether the owner has met the percentage of inventory requirements under § 6–817 of this subtitle."

respondent with express authority to sell the property. Therefore, the petitioner's first argument lacks merit.

The petitioner's second argument, that the respondent exercised sufficient "control" over the property to comply with the Act's registration requirement, fares no better. There are no facts indicating that the respondent had the capability to comply with the Act's registration requirements. The petitioner concedes that the respondent did not register the house in compliance with the Maryland Lead Poisoning Prevention Act.

That the respondent delivered certain documents to the tenant does not constitute controlling "the whole or any part of the freehold or leasehold interest to any property." In fact, the respondent was merely complying with Federal disclosure requirements set out 42 U.S.C. § 4852(d) (1992).

JUDGMENT AFFIRMED, WITH COSTS.