826 A.2d 467

## COMPTROLLER OF THE TREASURY

v.

### Olaf A. KOLZIG.

**No. 127, Sept. Term, 2002.**

Court of Appeals of Maryland.

June 16, 2003.

John K. Barry, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Gerald Langbaum, Asst. Atty. Gen., on brief), Annapolis, for appellant.

William P. Baker (baker & Baker, P.A., on brief), Baltimore, for appellee.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

■ The issue this appeal presents is whether "return," as used in Maryland Code (1989, 1997 Repl.Vol.) § 13–1101 of the Tax General Article[1] includes, in addition to the original income tax return, an amended income tax return filed in connection therewith, with the result that the limitations period prescribed by that section applies to both. The Maryland Tax Court answered, "no." On judicial review initiated by the Comptroller of the Treasury, the appellant, the Circuit Court for Anne Arundel County agreed. We shall affirm the judgment of the Circuit Court.

The facts, which are straightforward, are not in dispute. Olaf A. Kolzig, the appellee, a professional hockey player, filed

---

1. Unless otherwise indicated, future references will be to Maryland Code (1989, 1997 Repl.Vol.) of the Tax General Article.

for the tax years 1995 and 1996 income tax returns, on which he acknowledged that he was a Maryland resident. He subsequently filed an amended income tax return for each of the tax years, on each then claiming non-resident status and, as a result, a refund. The amended returns were filed in April, 1998, prior to the running of limitations as to either of the returns. The appellant paid the appellee the refund. After conducting an audit of the amended income tax returns and the appellee's claim of non-resident status, however, the appellant assessed the appellee the amount of the refunds he had been paid. That occurred on December 4, 2000, more than three years after both of the original income tax returns had been filed. The appellee appealed the assessment to the Tax Court and moved to dismiss the assessment as untimely, arguing that it was barred by the statute of limitations. The Tax Court agreed with the appellee and, so, granted the appellee's motion. Dissatisfied with that result, the appellant sought judicial review in the Circuit Court for Anne Arundel County, which, as already indicated, affirmed the judgment of the Tax Court. Aggrieved, the appellant noted an appeal to the Court of Special Appeals. While the case was pending, but prior to any proceedings in that court, this Court, on its own motion, issued the writ of certiorari. *Comptroller v. Kolzig,* 373 Md. 406, 818 A.2d 1105 (2003).

Section 13–1101 provides:

"(a) 3–year limit.—Except as otherwise provided in this section, an assessment of financial institution franchise tax or income tax may not be made after 3 years from the later of:

"(1) the date that the return is filed; or

"(2) the date that the return is due.

"(b) No limit.—An assessment of financial institution franchise tax or income tax may be made at any time if:

"(1) a false return is filed with the intent to evade the tax;

"(2) a willful attempt is made to evade the tax;

"(3) a return is not filed as required under Title 8 or 10 of this article;

"(4) an incomplete return is filed; or

"(5) a report of federal adjustment is not filed within the period required under § 13–409 of this title.

"(c) 1-year limit.—If a report of federal adjustment is filed within the time required under § 13–409 of this title, the tax collector shall assess the financial institution franchise tax or income tax within 1 year after the date on which the tax collector receives the report."

Since none of the conditions addressed in subsections (b) and (c) are applicable to the facts *sub judice*, only subsection (a) is at issue in this case.[2] As to it, the question to be answered is the reach of the limitations period it prescribes, whether, as the appellant argues, it is applicable in the case of both original income tax returns and amended income tax returns, running from the filing of whichever one produces the assessment at issue, or, as the appellee argues, it applies only to an original income tax return.

Determining the meaning of § 13–1101(a) involves statutory construction, the rules for which are well-settled. *Toler v. Motor Vehicle Admin.*, 373 Md. 214, 221, 817 A.2d

---

2. Senate Bill 102 was introduced, at the request of the Comptroller, as a Departmental Bill, by the Chairman of the Budget and Taxation Committee to address the issue that this case presents. Its purpose, as stated in the legislation, was, *inter alia*, to "provid[e] that the Comptroller shall make certain assessments within a certain period following the date an amended income tax return is filed." As filed, the bill added a new section (d), which provided:

"An assessment of income tax arising out of an amended return shall be made within 3 years after the date that the amended return is filed."

It also provided for a prospective effective date of July 1, 2003.

Senate Bill 102 was enacted, with amendments, *see* 2003 Md. Laws, ch. 7, and signed by the Governor on April 8, 2003, effective July 1, 2003. As enacted, it is applicable to all amended tax returns filed after June 30, 2003 and provides:

"(d)(1) Subject to the provisions of paragraph (2) of this subsection, an assessment of income tax arising out of an amended return shall be made within 3 years after the date that the amended return is filed.

"(2) An assessment of income tax under paragraph (1) of this subsection shall be related to changes made by the amended items in the return."

229, 233 (2003); *Gallegos v. Allstate Ins. Co.*, 372 Md. 748, 756, 816 A.2d 102, 107 (2003); *Dyer v. Otis Warren Real Estate Co.*, 371 Md. 576, 580–81, 810 A.2d 938, 941 (2002). We approach the interpretation of a statute with the goal of determining the intention of the Legislature in enacting it. *Dyer*, 371 Md. at 580–81, 810 A.2d at 941. In that regard, we begin our inquiry with the words of the statute and, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we ordinarily end our inquiry there also. *Chesapeake and Potomac Tel. Co. v. Dir. of Fin. for Mayor and City Council of Baltimore*, 343 Md. 567, 578–79, 683 A.2d 512, 517 (1996). "If, and only if, it proves impossible to determine what the Legislature intended with respect to the question before us from the language alone, we turn to other indicia that have proved useful in discerning that intent." *Gallegos*, 372 Md. at 756, 816 A.2d at 107. *See Caffrey v. Liquor Control*, 370 Md. 272, 291–92, 805 A.2d 268, 279 (2002); *Chen v. State*, 370 Md. 99, 106, 803 A.2d 518, 521–22 (2002); *Witte v. Azarian*, 369 Md. 518, 525–26, 801 A.2d 160, 165 (2002). Thus, when the language of a statute is plain and unambiguous, a court may neither add nor delete language so as to "reflect an intent not evidenced in that language," *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 755 (1993), or construe the statute with " 'forced or subtle interpretation' that limit or extend its application." *Id.* (quoting *Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 73, 517 A.2d 730, 732 (1986)).

Relying on the canons of statutory construction, emphasizing in particular, quoting, respectively, *Holbrook v. State*, 364 Md. 354, 364, 772 A.2d 1240, 1246 (2001); *Brown v. State*, 285 Md. 469, 474, 403 A.2d 788, 791 (1979); *Graves v. State*, 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001); *Haupt v. State*, 340 Md. 462, 467, 667 A.2d 179, 183 (1995), the admonition to courts to: give the words of a statute "their natural and usual meaning in the context of the Legislature's purpose and objective in enacting the statute," avoid "resorting to subtle or forced interpretations for the purpose of extending or limiting [the statute's] operation," read statutes from a "commonsensi-

cal perspective to avoid a farfetched interpretation," so as to reconcile and harmonize all of its parts, as much as possible, and interpret the language in context, the appellant maintains that the interpretation given § 13–1101(a) by the Tax Court and the Circuit Court "stands the statutory language on its head." (Appellant's brief, at 5). He reasons: "[t]he natural and usual meaning of the word 'return' is tax return, and an amended return fits within this definition. It is one type of 'return', and use of the word 'return' by the statute does not inherently prefer one adjective—'original'—over another." *Id.* For support, the appellant directs our attention to §§ 13–301 [3] and 13–401,[4] both permitting the Comptroller to audit tax returns, without differentiating between an original return and an amended one. The appellant also relies on *Comptroller v. Fairchild Indus.*, 303 Md. 280, 493 A.2d 341 (1985).

The appellee sees the matter totally differently. He maintains that the interpretation that the Maryland Tax Court and the Circuit Court gave § 13–1101(a) is the only reasonable interpretation. Aside from urging that the language of the statute is clear and unambiguous and, thus, by its very terms, excludes amended income tax returns, the appellee relies on legislation introduced by the appellant during the 2003 Legislative Session, now enacted, but not effective until July 1, 2003, *see* note 2, *supra*, which specifically provided that assessments of income tax "arising out of an amended return shall be made within three years after the date that the amended return is filed" and the Senate amendment limiting

---

3. Section 13–301 provides: "A tax collector may examine or audit a tax return filed with the tax collector."

4. Section 13–401 provides:
   "(a) In general.—Except as provided in subsection (b) of this section, if a tax collector examines or audits a return and determines that the tax due exceeds the amount shown on the return, the tax collector shall assess the deficiency.
   "(b) Credits.—A tax collector shall allow a credit against any sales and use tax deficiency that would otherwise be assessed for any amount of sales and use tax that the tax collector determines the person who filed the return overpaid on or before the date the deficiency was due."

the assessments as a result of amended returns to "changes made by the amended items in the return."

As we have seen, pursuant to § 13–1101(a), "an assessment of . . . income tax may not be made after three years from the later of: (1) the date that the return is filed; or (2) the date that the return is due." Thus, limitations prescribed by that statute runs from the later to occur of two dates, when the return is filed or when the return is due. So phrased, the statute is clear and not at all ambiguous and the Legislature's intention, with regard to the meaning of "return" is patent. Only an original income tax return has a due date; an amended return, because it changes one also filed and in some particular, presumably discovered after the filing of the return being amended, does not, and, indeed, can not have a due date. Moreover, the words of the statute provide for but one filing date, one due date and one return, expressly referring only to "the return." Finally, by tying the running of limitations to the latest to occur of two dates relevant to the filing of an income tax return, without providing that one of those two dates relates to a different return, the General Assembly made clear that "the return" referred to in paragraph (1) is the same "return" referred to in paragraph (2).

*Fairchild Industries* is not to the contrary. That case did not involve an interpretation of § 13–1101(a). Rather, it was whether, under Maryland Code (1957, 1980 Repl.Vol.), Article 81, § 310(c),[5] a corporate taxpayer was entitled to interest on a state income tax refund paid in respect to a carryback of a net operating loss and, if so, the date from which the interest was computed. 303 Md. at 282, 493 A.2d at 342. Fairchild filed amended tax returns for the tax years 1975, 1976 and 1977, in which it claimed tax refunds for those years based on

---

5. Maryland Code (1957, 1980 Repl.Vol.), Article 81, § 310(c) provided that interest shall be paid on income tax refunds "accounting from the date the return required under this subtitle was due to be filed, but interest may not be paid on tax refunds now pending or subsequently filed pursuant to this section if the tax originally paid was paid in whole or in part by reason of a mistake or error on the part of the taxpayer and not attributable to the State or any department or agency thereof."

losses incurred in 1978. Although it filed the amended return in September 1979, Fairchild sought interest computed from the date the original returns were filed. The comptroller paid the principal amount due, but refused to pay any interest. *Id.* at 282–83, 493 A.2d at 342. This Court determined that interest was payable. Section 310(c) provided that interest was payable "from the date the return required under this subtitle was due to be filed." *Id.* at 287, 493 A.2d at 344. The Comptroller argued that "return," as used in § 310(c) referred to the return generating the refund upon which the interest is claimed. Fairchild, on the other hand, relying on the plain meaning rule, argued that the interest must be computed from the date of the original returns and that, to hold otherwise, would be to rewrite the statute. *Id.* at 287–88, 493 A.2d at 344–45. Concluding from the differing positions of the parties that "a doubt or ambiguity exists regarding the meaning and application of the phrase in question, in the context of its usage in § 310(c)," *id.* at 287–88, 493 A.2d at 344–45, the Court opted for the construction urged by the Comptroller. It explained:

"As we see it, to interpret the statute to afford the taxpayer a right to interest, commencing from the due date of the original return, rather than from the date the amended return was filed, is inconsistent with common sense and with the legislative purpose in authorizing interest on tax refunds. The interest provisions contained in Article 81 of the Maryland Code are designed to commence the running of interest from the time that the operative fact arises which entitles a taxpayer or the State to the principal amount in question and for the period that such amounts were held by or subject to the use of the other party.

"The event which gave rise to the overpayment of Fairchild's 1975, 1976 and 1977 taxes was its net operating loss in 1978—a year subsequent to the year in which the excess taxes were actually paid. Had there been no net operating loss incurred in 1978, there would have been no net operating loss carryback to the three previous years. Before Fairchild incurred net operating losses in 1978, it had no

basis for claiming a refund for overpayment of taxes. From the extended due dates of the original returns until the amended returns were filed, the State was legally entitled to the use and possession of Fairchild's tax payments. The State had no obligation to pay Fairchild a tax refund, let alone interest on the refund, until the later ensuing net operating loss arose and the carryback was claimed. That the law permits a taxpayer to subsequently carryback a net operating loss and to obtain a refund in no way reflects a taxpayer's right to derive the benefits of the funds during the intervening period. Plainly, the nature and context of a net operating loss carryback supports the end result that where a refund for taxes arises from a net operating loss carryback, interest should be computed from the date the amended return claiming the net operating loss carryback is filed."

*Id.* at 288–89, 493 A.2d at 345 (footnote omitted).

Clearly, the total illogic of requiring the payment of interest computed for a period prior to the refund being due was the basis of the *Fairchild* decision. It was the context of *Fairchild* that rendered the meaning of § 310(c) ambiguous. The circumstances of the case *sub judice* are by no means comparable. Certainly, the fact that §§ 13–301 and 13–401 may be interpreted inconsistently with § 13–1101(a), without more, in particular, a context similar to that in *Fairchild,* does not suffice.

■ We may confirm the meaning reached by reference to the words of the statute by considering the purpose, goal or context of the statute, or other extraneous considerations relevant to, and bearing on the statute's meaning. *See Total Audio–Visual Sys. v. Dept. of Labor, Licensing & Regulation,* 360 Md. 387, 395, 758 A.2d 124, 128 (2000); *Prince George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898, 901 (1995); *State v. Thompson,* 332 Md. at 1, 7, 629 A.2d 731, 732. *See also Taylor v. Friedman,* 344 Md. 572, 582, 689 A.2d 59, 63 (1997) (even when language of a statute is plain and unambiguous, courts may look to a legislative purpose to support or

confirm plain meaning). Although certainly not required, confirmation of the interpretation we give § 13–1101(a) can be made by reference to the interpretation given a similar statute by the federal courts.

Section 10–107 of the Tax–General Article requires, "[t]o the extent practicable, the Comptroller [to] apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State." In *Lyon v. Campbell*, 324 Md. 178, 185, 596 A.2d 1012, 1015 (1991), despite rejecting its application in that case, this Court explained that § 10–107 applies where the Maryland tax code is " 'inextricably keyed' " to the federal tax code by virtue of its adoption of the federal law, (quoting *Comptroller v. Chesapeake Corp.*, 54 Md.App. 208, 213–14, 458 A.2d 459, 463 (1983)), and, thus, is designed to avoid the "anomalous result" of a taxpayer having different result regarding payment of his Maryland and federal tax, even though the Maryland tax provision incorporates the federal tax provision. *See Comptroller v. Diebold, Inc.*, 279 Md. 401, 409, 369 A.2d 77, 82 (1977) (holding that where the Maryland tax code incorporates a provision in the federal tax code, the interpretation of the Maryland and federal tax provisions should be consistent). More recently, in *Comptroller v. Gannett Co.*, 356 Md. 699, 720, 741 A.2d 1130, 1141 (1999), we observed:

> "Section 10–107 is not a direct authorization for appellant to incorporate into the Maryland tax code whatever I.R.C. provisions it sees fit to apply; rather, section 10–107 expresses a policy of comity that, when exercising any legislatively-authorized powers that parallel an I.R.C. provision, appellant must comply with the judicial and administrative interpretations of that federal statute."

The section of the Federal Tax Code comparable to § 13–1101(a), 26 U.S.C. § 6501(a) provides:

> "(a) General rule. Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)

or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)."

Moreover, also relevant is § 6501(c), and, in particular, three of the exceptions it prescribes to the limitations period. Those exceptions provide:

"(1) False return. In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

"(2) Willful attempt to evade tax. In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

"(3) No return. In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

As the appellee points out, these three exceptions in the federal law are substantially identical to § 13–1101(b)(1)-(3).

In *Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 388, 104 S.Ct. 756, 759, 78 L.Ed.2d 549, 554 (1984), the Supreme Court of the United States observed, as to this section, that it "establishes a general 3–year period of limitations 'after the return was filed' for the assessment of income and certain other federal taxes," noting, however, that "the filing of an amended return in a non-fraudulent situation does not serve to extend the period within which the Commissioner may assess a deficiency." *Id* . at 398, 104 S.Ct. at 762, 78 L.Ed.2d at 558. For the latter proposition, it cited *Zellerbach*

*Paper Co. v. Helvering,* 293 U.S. 172, 181, 55 S.Ct. 127, 131, 79 L.Ed. 264, 269 (1934), in which it had earlier held that "a second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run."

The Circuit Court concluded, as the appellee argues, that "the Maryland provision parallels the federal limitations provision" and that "it [is] practicable to apply the federal interpretation and create continuity between the two tax systems." We agree.

JUDGMENT AFFIRMED, WITH COSTS.